## NORFOLK & W. RY. CO. v. ROYAL INDEMNITY CO.

(District Court, E. D. Pennsylvania. May 9, 1919.)

No. 5806.

INSURANCE ⊕163(½)—BOILER INSURANCE—CONSTRUCTION OF POLICY—"BOILER."

A policy insuring a steam boiler against explosion or rupture, which defined "boiler," as used therein, as "any vessel * * * which is used for the generation of steam, and shall include * * * all connecting pipes and fittings up to and including the valve nearest the boiler," *held* not to cover a rupture of the whistle pipe above the whistle valve.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Boiler.]

At Law. Action by the Norfolk & Western Railway Company against the Royal Indemnity Company. On case stated. Judgment for defendant.

F. Markoe Rivinus, Thomas Reath, and Theodore W. Reath, all of Philadelphia, Pa., for plaintiff.

Frank J. O'Neill, of New York City, and Layton M. Schoch, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The parties have agreed upon a statement of facts for the opinion of the court in the nature of a special verdict; the question being whether, under the case stated, the defendant is liable under its policy of steam boiler insurance, a copy of which is attached and made part of the case stated.

Under the terms of the policy, the defendant indemnified the plaintiff against an explosion or rupture as defined in condition 4 of a certain stationary boiler in the operation of which one M. H. Parker, fireman, employed by the plaintiff was killed. Suit against the plaintiff resulted in the payment by the plaintiff of $5,000, to which the defendant agreed subject to its liability being determined in an appropriate tribunal.

Condition 4 of the policy, as far as it relates to the present case, is as follows:

"(4) The terms 'explosion,' 'rupture,' 'boiler,' * * * shall, when used in this policy, mean respectively as follows:

"(a) 'Explosion' and /or 'rupture' shall mean a sudden substantial tearing asunder of the boiler or any part thereof, caused solely by steam pressure. * * *

"(c) 'Boiler' shall mean any vessel * * * which is used for the generation of steam, and shall include safety valves, steam and water gauges, and all connecting pipes and fittings up to and including the valve nearest the boiler."

The case stated sets out that Parker "opened the whistle valve, whereupon as a result of the said operation, the pipe became ruptured at the upper edge of the whistle valve, the whistle and that portion of the pipe above the whistle valve (which led to the whistle through the roof of the boiler shed) fell, breaking the roof and striking Parker

on the head, killing him. The decedent's death was occasioned as stated in the evidence thus:

"Q. 14. What caused his death? A. Whistle pipe, I think caused his death.

"Q. 15. How did it cause it? A. Whistle pipe blew out and come down.

"Q. 16. Whereabouts did the pipe blow loose, at what connection? A. Blowed loose at the whistle valve."

The pipes leading from the boiler to the whistle valve, and from the whistle valve to the whistle, and their connections and valves are shown on a blueprint accompanying the case stated. The pipes, connections, and valves are thus described in the case stated:

"In the pipe above mentioned, which connected the whistle with the boiler, was a stop valve located in the pipe a distance 18 inches above the boiler, which valve was ordinarily kept open and was open at the time of the accident; that between the stop valve and the whistle valve a connecting steam pipe led to an air compressor in the plant as shown by the annexed blue print; that this stop valve was only used in emergency when it became necessary to make repairs to the whistle valve or other connections above it, or to the pipe, fittings, or apparatus connected with the air compressor and its steam line, or when it was otherwise desirable to cut the connection of the steam between the boiler and any portion of the fittings above the stop valve; that the whistle valve above stated, which was ordinarily closed, was located in the pipe 17 inches above the stop valve or 35 inches from the boiler, the part of the pipe which was ruptured was subject to steam pressure only at such times as the whistle valve was open; all of which is shown on the plan hereto attached and made part hereof, marked 'B,' which shows the relative positions, size and shape of the boiler, pipes, valves, and whistle described in this agreed statement."

The question to be determined is whether, under the policy, the defendant insured the plaintiff against the risk of the explosion or rupture which caused the death of Parker, and the determination of the question depends upon whether the fact that "the pipe became ruptured at the upper edge of the whistle valve" constitutes a tearing asunder of the boiler or any part thereof caused solely by steam pressure, as defined in paragraph 4 (a). That depends upon whether the pipe was ruptured at a point coming within the description of the policy as included within the term "boiler" or any part thereof. Under paragraph 4 (c) the term "boiler," which in common parlance would mean, and is stated in the paragraph to mean, "any vessel which is described in statement 6 of the schedule, and which is used for the generation of steam,". is extended to include "all connecting pipes and fittings up to and including the valve nearest the boiler."

The defendant contends that the stop valve, which appears on the blueprint, and is located in a 3-inch pipe leading to an air compressor, which 3-inch pipe is connected with the 2-inch pipe containing the whistle valve, is the valve nearest the boiler, and hence the rupture having occurred beyond that valve, the plaintiff cannot recover.

As I read paragraph 4 (c), I think it clearly means that the "boiler" shall include all connecting pipes and fittings up to and including the valve in such connecting pipes, and fittings nearest the boiler. The whistle pipe and the whistle valve are connecting pipes and fittings, and consequently the whistle valve is included in "all connecting pipes and fittings up to and including the valve nearest the boiler"; that

is to say, it is the valve of the whistle pipe nearest the boiler, and the whistle pipe is a "connecting pipe." The accident occurred, however, not through rupture of the valve of the whistle pipe, but through a rupture of the whistle pipe itself at the upper edge of the whistle valve. That clearly appears from the case stated. It is nowhere stated that the valve became ruptured, but "the pipe became ruptured at the upper edge of the whistle valve," and "the whistle and that portion of the pipe above the whistle valve fell."

Construing paragraph 4 (c) as broadly as its language will permit, it does not include within a rupture of the boiler a rupture of the whistle pipe, except up to the whistle valve, that being the valve of that pipe nearest the boiler, and except the whistle valve itself. But there was no rupture of the valve; the rupture which took place was a rupture of the pipe at the upper edge of the valve, when the valve was open. It is apparent that the rupture occurred beyond the physical limits of what the defendant undertook to insure against steam pressure.

It is contended for the plaintiff that, because section (a) defines "rupture" to mean "a sudden substantial tearing asunder of the boiler, or any part thereof, caused solely by steam pressure," the tearing asunder of any pipe caused solely by steam pressure should, under a liberal construction of the policy, be included within the term "tearing asunder of the boiler."

This is not a case of construction of an exception or limitation upon the insurance of the boiler from explosion or rupture, which would require a liberal construction of the terms of the policy; but, to the contrary, it involves an extension or enlargement of the ordinary meaning of a "boiler" to include valves, gauges, pipes, and fittings up to and including a designated valve, namely, the valve of connecting pipes and fittings nearest the boiler. As the rupture did not occur within the physical limits of the boiler, as defined in the policy, it is not for the court to rewrite the policy, so as to further enlarge the physical limits of what is included in the term "boiler." The language of the policy is plain, clear, and unambiguous, and is binding upon the parties in accordance with its terms.

Judgment for the defendant.