THE AETNA CASUALTY AND SURETY COMPANY, A CORPORATION, *Petitioner*, v. FRANK CARTMEL, *Respondent*.

Opinion Filed May 20,1924.

This case was decided by Division B.

1. The rule for the construction and interpretation of insurance contracts is that the policy must be liberally construed in favor of the insured so as not to defeat, without a plain necessity his claim to the indemnity which, in making the insurance, it was his object to secure.

2. While insurance contracts should be construed most strongly against the insurer, yet language used in a policy of insurance is to be given its popular and usual significance unless the context requires a different construction.

3. The word "collision" used in a contract of insurance indemnifying the insured against loss to an automobile described in the policy from collision with another object, either moving or stationary, means the act of colliding; and imports striking together; violent contact.

4. A contract of insurance indemnified the owner against loss
or damage sustained to an automobile described "if caused
solely by collision with another object, either moving or sta-
tionary." In an action on the policy it was proved at the
trial that "all of a sudden" the roadbed "gave way under the
car" and it "went down in soft sand" and "stuck." *Held*:
Not a "collision" within the meaning of the term as em-
ployed in the policy.

A Writ of *Certiorari* to the Circuit Court for Duval
County; George Couper Gibbs, Judge.

Judgment quashed.

*Marks, Marks & Holt*, for Petitioner;

*George C. Bedell*, for Respondent.

WEST, J.—This action is upon an insurance policy in-
demnifying the insured against loss or damage to any
automobile described in the warranties thereof caused
solely by collision with another object, either moving or
stationary. Upon trial in the Civil Court of Record of
Duval County there was a directed verdict for plaintiff.
On appeal to the Circuit Court the judgment was affirmed.
Petitioner applied to this court for writ of *certiorari* and
writ was issued.

The declaration alleges that the certain automobile of
plaintiff referred to and described in the warranties of
the policy sued on "was damaged by striking a portion of
the roadbed and loss was thereby ocassioned to the plain-
tiff to the amount of, to-wit, twelve hundred dollars, in
such circumstances as to come within the promise and
undertaking of said policy."

The printed policy covers loss or damage "if sustained

within the period covered by this policy and if caused solely by collision with another object, either moving or stationary (excluding, however, all loss or damage by fire arising from any cause whatsoever and all loss or damage caused by striking any portion of the roadbed or by striking the rails or ties of street, steam or electric rail-roads).'' But the policy was amended by endorsement attached thereto by which ''it is understood and agreed that, as respects insurance granted thereunder against loss or damage to the insured automobile by collision, that part of the provision which excludes 'loss or damage by striking any portion the roadbed or by striking the rails or ties or street, steam or electric railroads' is hereby expunged.'' So that as amended the policy indemnified the insured against loss or damage to the automobile des-cribed ''if sustained within the period covered by this policy and if caused solely by collision with another object, either moving or stationary (excluding, however, all loss or damage by fire arising from any cause whatsoever).''

The petitioner contends that the facts proved do not show a collision reasonably within the contemplation of the parties when the policy was procured. Respondent maintains that the whole case turns upon the construction of the policy as amended by the ''rider'' attached thereto.

It may be conceded that the effect of the amendment was to render the company liable upon the contract for and indemnify the insured against loss or damage resulting from collision by the automobile with the roadbed, on the theory that the roadbed is ''another object'' within the meaning of that term as used in the policy.

What are the facts? They are contained in plaintiff's evidence given at the trial, undisputed, conceded to be true. Do they constitute a ''collision'' by plaintiff's auto-mobile ''with another object'' against which he was in-

demnified by the contract of insurance from loss or damage?

The witness testified that the automobile was damaged on the beach south of Pablo and that he was driving it at the time. He said: "I was riding along, and all of a sudden the beach gave way under the car and it went down and stuck; I could not get it out. I did everything I could to get it under its own power, but the wheels were just spinning around and kept going down lower. After stating that he employed a man to get the car out, he said: "He (the man employed) went down there that afternoon but could not do anything with it. The car had sunk so fast, and he didn't get it out until the next day.

* * § I discovered later on that it was full of sand and would have to be taken all to pieces and cleaned up, and that it sustained damage, for which I am suing in this case. That damage was caused by the tide, the salt water and sand getting into the bearings. There was no sand and water in there before this cave-in on the beach." On cross-examination he testified: "I was headed south when my car went down, but I had up enough speed to get through it, and that frightened me—I didn't like it, and I immediately turned around to go back, and it was when I turned around and started back that the car got stuck so I couldn't get it out. I didn't go any further south past this point where the beach was soft than a sufficient distance to turn around. I turned around and immediately started back, but it is correct that I had completed the turn when my car became stuck." On re-direct: I was going south on the beach when the road gave way and the car went down in soft sand, but I went on and got out on hard sand after the first time; when going back,

the beach gave way the second time, and I couldn't get out —that was when it came up and washed over the car— then I headed north toward home. I never did get the car out after that, until it was pulled out, as I have testified."

This court is in accord with the recognized rule for the interpretation of insurance contracts that "the policy must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim to the indemnity which in making the insurance it was his object to secure." Nat'l Surety Co. v. Williams, 74 Fla. 446, 77 South. Rep. 212; Queen Ins. Co. v. Patterson Drug Co., 73 Fla. 665, 74 South. Rep. 807; Caledonian Ins. Co. v. Smith, 65 Fla. 429, 62 South. Rep. 595; L'Engle v. Scottish Union, etc., Co., 48 Fla. 82, 37 South. Rep. 462. Yet such contracts are subject to the same rules of construction applied to other contracts, and language used in a policy of insurance is to be given its popular and usual significance unless the context requires a different construction. Pheonix Assur. Co. v. Epstein, 73 Fla. 991 75 South .Rep. 537; Hartford Fire Ins. Co. v. Wimbish, 12 Ga. App. 712, 78 S. E. Rep. 265; Bell v. Am. Ins. Co., 173 Wis. 533, 181 N. W. 733,; Southern Cas. Co. v. Johnson (Ariz.) 207 Pac. Rep. 987; Hoosier Mutual etc. Co. v. Lanem, (Ind.) 137 N. E. Rep. 626.

The word "collision" is defined as: "The act or instance of colliding; state of having collided; a violent meeting, as of railroad trains." Websters New International Dictionary. "The act of striking or dashing together; a striking together of two bodies; the meeting and mutual striking or clashing of two or more moving bodies, or of a moving body with a stationary one; specifically, in recent use, the dashing together of two railroad trains, or of two boats or ships." Century Dictionary.

In Harris v. Am. Cas. Co., 83 N. J. L. 641, 85 Atl. Rep. 194, in construing a similar policy, the court said: "'Collision' means the act of colliding, and imports striking together; violent contact."

In Southern Cas. Co. v. Johnson, *supra*, the court said: "the word 'collision' has its usual meaning of 'striking together, or striking against,' and includes the case of an automobile striking against any other object, whether that object be standing or in motion, or whether it be another automobile, vehicle, some similar object, or something altogether different. See also Berry on Automobiles, 2 ed. §974; Columbia Ins. Co. v. Chatterjee (Okla.) 129 Pac. Rep. 102; Continental Cas. Co. v. Paul (Ala.) 95 South. Rep. 814.

Was the occurence described in the evidence a "collision" according to the popular and usual significiance of that term, of the automobile of plaintiff with another object? The automobile as it ran along the beach was in contact with the "roadbed," which is conceded to be "another object," within the meaning of that term as employed in the policy. It did not collide with or strike against the roadbed. The witness said that going south "the car went down in soft sand," "but I had enough speed to get through it." "I immediately turned around to go back and it was when I turned around and started back that the car got stuck so I couldn't get it out."

He states further that "all of a sudden the beach gave way under the car and it went down and stuck."

What seems to have happened was that the automobile was run upon a portion of the beach or "roadbed" where the surface was not sufficiently firm to withstand the weight but "gave way under the car" and it "went down in soft sand" and "stuck." It may be that "all of a sudden the beach gave way," but taking into consideration

all of the evidence of this witness and giving to the word "collision" its popular and usual significance, it cannot, we think, be said, under the facts of this case, that there was a colliding of the automobile with the roadbed. It passed over this point going south and turned around to return going north, when, in attempting to again pass over the place where the "soft sand" was, the power of the automobile proved insufficient to propel it through a second time, so it was "stuck" and the injury suffered as alleged resulted from the effect of water and sand with which the automobile was partially submerged by an incoming tide before it could be extricated. Many cases have been examined, but we have found none where similar or analogous facts have been held to constitute a collision under a policy of this kind, and industry of counsel, who have assisted the court by able briefs and memoranda of recent cases, has been unable to discover such a case. This case is essentially different in its facts from Power Motor Car Co. v. United States Fire Ins. Co. (Mont.) 223 Pac. Rep. 112, Hanvey v. Georgia Life Ins. Co., 141 Ga. 389, 81 S. E. Rep. 206, and Interstate Casualty Co. v. Stewart, 208 Ala. 377, 94 South. Rep. 345, 26 A. L. R. 427.

The Judgment will be quashed.

WHITFIELD, P. J., AND TERRELL, J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.