**W. J. BOYNTON & SON, Inc., a Florida corporation, Plaintiff,**

v.

**ÆTNA INSURANCE COMPANY, a Connecticut corporation, Defendant.**

**No. 649.**

United States District Court
N. D. Florida,
Tallahassee Division.

Oct. 14, 1958.

Moore & Henderson, Tallahassee, Fla., for plaintiff.

Keen, O'Kelley & Spitz, Tallahassee, Fla., for defendant.

CARSWELL, Chief Judge.

This is before the Court for trial without a jury. Most of the material facts have been stipulated by the parties and it is upon this stipulation and testimony and deposition of plaintiff, together with exhibits attached to the pleadings, that the Court renders its judgment.

The record discloses that plaintiff and defendant entered into a contract insuring plaintiff against physical loss or damage directly caused by fire and other disasters and "leakage resulting from rupture, collapse and/or subsidence of tanks" and by subsequent endorsement stated the insurer's liability for a certain amount " * * * on turpentine in tanks (confined to tanks 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12)".

On July 30, 1957, practically the entire physical plant of plaintiff's turpentine business was destroyed by fire, including the building and area where the distilling operation took place some 40 yards south of tanks storing turpentine referred to in the above endorsement. These 12 metal receptacles were arranged adjacent to each other on a north-south line, the southernmost being No. 1 and the northernmost being No. 12. Originally the insurance contract had provided coverage for turpentine in only Tanks 1, 2 and 3. At all times relevant here, however, the policy also included tanks 4 through 12. All of the tanks were connected by pipes and for many years it was the customary practice of the business to shift the liquid from one tank to another by the opening of a valve near Tank 1 and activating a pump at that point.

Plaintiff paid premium monthly on a gallonage basis and regularly included turpentine at distillation point in addition to that actually in tanks 1 through 12.

On August 13, 1957, in accordance with usual procedure an employee of plaintiff sought to shift turpentine from tank 1 to the larger tank 12. A valve a few feet from tank 1 was opened and the pump was started. Instead of the turpentine flowing into tank 12, however, a number of gallons flowed through this opened valve and into a two inch galvanized pipe buried in the earth which ran southward into and under the burned out ruins of the distilling area. It is stipulated that this dissipation would not have occurred unless the underground pipe had been ruptured by the fire some two weeks earlier. This is so because a valve at some point below the rupture would have checked the flow of turpentine, and then the action of the pump would have forced the liquid into its desired position in tank 12.

The flow of the turpentine from the rupture was not readily discernible by plaintiff's employee since it occurred through the underground pipe and discharged at a point some 120 feet from the pump.

The sole question before the Court is whether this loss was covered by the policy.

The defendant contends that the contract is plain and unambiguous in its limitation of responsibility for leakage loss except by rupture of sides, top and

bottom of the actual designated tanks themselves. It argues that any other construction would be tantamount to making the contract include all of the plaintiff's system, although it does admit that leakage through the valve immediately adjacent to any one of the subject tanks should probably be considered as part of such tank. Most of the cases cited by defendant deal with boiler explosions and the general philosophy thereof is that the loss occurred at a point distant from the specifically mentioned area and was not therefore recoverable against insurer. In these cases the mechanical operations involved were apparently quite complex involving numerous valves and a complicated system of specialized machinery. They stand for the sound proposition that one cannot extend his insurance coverage throughout his entire system where the relationship to the specified coverage is remote or contrived, which is not the case here. Some are also distinguishable in that here the coverage specifically included the contents of the tanks, i. e., the turpentine itself, and not merely the receptacles. See Public Indemnity Company of Newark, New Jersey v. Yearwood, 1935, 50 Ga.App. 646, 179 S.E. 232; Norfolk & W. Ry. Co. v. Royal Indemnity Co., D.C.E.D.Pa. 1919, 257 F. 849; Ithaca Traction Corporation v. Travelers' Indemnity Co., Sup.1919, 177 N.Y.S. 753 and Hartford Fire Ins. Co. v. Paine, 1922, 28 Ga.App. 655, 112 S.E. 736.

The facts suggest here that the conduct of plaintiff's employee might amount to negligence, but it is well settled that such defense is not available to the insurer unless such conduct amounts to gross negligence. Due to the concealed nature of the pipe rupture there can scarcely be any finding of gross negligence, particularly in view of the fact that it is admitted that the operation was attempted in a normal and routine manner.

■ It is, of course, clear that contracts of insurance are construed strictly against the insurer and liberally in favor of the insured and where terms of an insurance policy will bear two interpretations, that one will be adopted which sustains the claim for indemnity. National Surety Corporation v. Windham, Fla., 74 So.2d 549; Sovereign Camp W. O. W. v. Lee, 125 Fla. 736, 171 So. 526; Poole v. Travelers Insurance Co., 130 Fla. 806, 179 So. 138; Lattimore v. Merchants Fire Assurance Corporation, D.C., 151 F.Supp. 396.

It takes no such broad guide, however, to find for plaintiff under the facts here. Plaintiff insured against the loss of turpentine in tanks 1 through 12 by leakage or rupture. A very unsophisticated system of pipes and one valve connected the 12 tanks designated in the endorsement.

■ The description of property is usually written in brief and general terms. Accordingly, the description in the policy covers not only what is specifically mentioned, but also whatever is reasonably appurtenant to it or included in it. Aetna Casualty & Surety Co. v. Cartmel, 87 Fla. 495, 100 So. 802, 35 A.L.R. 1013; Queen Insurance Co. v. Patterson Drug Co., 73 Fla. 665, 74 So. 807, L.R.A.1917D, 1091; Norfolk & W. Ry. Co. v. Royal Indemnity Co., D.C., 257 F. 849; Hartford Steam Boiler Inspection & Ins. Co. v. Pabst Brewing Company, 7 Cir., 201 F. 617.

■ The loss here was the result of rupture of a certain line which was an integral part of the specified coverage of tanks 1 through 12 inclusive. To reach any other conclusion would be to give the contract such a constrained and limited application as to deprive the insured of the protection for which he contracted. The fact that insured paid premiums monthly on a per gallon basis, including turpentine transmitted through the line in which the actual rupture occurred, merely gives added weight to the finding here though not in itself controlling.

Counsel for the respective parties have stipulated that the net loss of plaintiff amounted to $3,281.91, plus interest at

6% per annum thereon from February 13, 1958, and have agreed that 15% of the total recovery here represents a reasonable attorney's fee. Judgment will be entered accordingly.