Gary **WHITE**, Administrator, Estate of Earl White, Deceased, Plaintiff-Appellee,

v.

The **TRAVELERS INDEMNITY COMPANY**, Defendant-Appellant.

No. 18770.

United States Court of Appeals
Sixth Circuit.

Oct. 14, 1969.

Russell G. Lazenby, Jr., Nashville, Tenn., Glasgow, Adams & Taylor, Nashville, Tenn., on brief, for appellant.

William J. Harbison, Nashville, Tenn., Solon Fitzpatrick, Carthage, Tenn., Trabue, Minick, Sturdivant & Harbison, Nashville, Tenn., on brief, for appellee.

Before PHILLIPS and CELEBREZZE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Earl White operated a gasoline service station which made minor repairs to automobiles. John B. Crawford, a customer, came to the service station complaining of trouble with his car. On the request of Crawford, White got into the car with Crawford and drove the motor vehicle to determine what was causing the trouble. While so engaged, the vehicle was involved in a collision with a car being driven by J. T. Bennett, Jr. As a result of this collision, Mrs. Nannie Pearl Bennett, the wife of J. T. Bennett, Sr., was injured; Mrs. Minnie Bennett was killed, and the car in which they were riding, owned by J. T. Bennett, Sr., was damaged.

Mr. Earl White, the owner of the service station, who was driving Mr. Crawford's car at the time of the accident, and Mr. Crawford, were sued for the death of Mrs. Minnie Bennett in the amount of $100,000. After this suit was commenced, Mr. White had his attorney send The Travelers Indemnity Company, with whom he had a policy of automobile indemnity insurance, a copy of the summons and declaration, and requested the company to defend the suit for him; but the company refused on the ground that the policy of insurance did not cover him for damages arising from the accident in question; and a judgment was thereafter rendered against Mr. White and Mr. Crawford in the amount of $6,000 and costs.

Mr. White and Mr. Crawford were also sued by Mr. Bennett and his wife, Nannie Pearl Bennett, for $25,000. Mr. Crawford was insolvent. Mr. Earl White then had his attorney request The Travelers Indemnity Company, on October 12, 1963, to defend him in the two suits brought by the Bennetts. Mr. and Mrs. Bennett then proposed to settle both of their claims against Mr. White for a total sum of $3,000.

On October 17, 1963, the insurance company refused to defend these two suits. Thereafter, on November 1, 1963, Mr. White's attorney, in person and by letter, informed the insurance company that the judgment, in the amount of $6,000 and costs, that had been rendered against Mr. White for damages resulting in the death of Mrs. Minnie Bennett, and the other two suits brought by J. T. Bennett and his wife, Nannie Pearl Bennett, could be settled for $11,500: $6,000 in payment of the judgment for damages arising out of the death of Mrs. Minnie Bennett; $3,000 in settlement of the suit for $10,000 brought by Mr. and Mrs. Bennett, and $2,500 for Mr. White's attorney's fee and other expenses. The insurance company refused to pay the above sum on the ground that the policy of insurance did not cover Mr. White for damages arising out of the accident.

Mr. White, thereafter, paid Mr. and Mrs. Bennett the sum of $3,000 in settlement of their claim; he further paid the amount of $6,044 in discharge of the judgment and costs arising out of the damage suit arising out of the death of Mrs. Minnie Bennett; and his attorney's fee of $2,500, while due on November 4, 1963, was not then paid by Mr. White. However, he did pay the trial expenses and the costs of preparing for trial in the case involving the death of Mrs. Minnie Bennett. The total which Mr. White paid, as above itemized, amounted to $9,147.25, plus interest on the sum from November 4, 1963, which the insurance company refused to pay.

Mr. Earl White died subsequently, and his son, Gary Earl White, as personal representative of the estate of the deceased, on January 29, 1964, commenced this action against The Travelers In-

demnity Company in the Circuit Court of Smith County, Tennessee, to recover the above-mentioned amount of $9,147.-25, plus the attorney fee of $2,500, or a total of $11,647.25.

On motion of the insurance company, the action was removed to the United States District Court, the plaintiff being a resident of the State of Tennessee, and the defendant, a corporation organized under the laws of Connecticut, with its principal place of business in that state.

Following removal of the case to the federal court, both parties moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The District Court found there was no genuine issue as to any material fact; that the action might properly be disposed of on the motion for summary judgment; and the court, after due consideration, evidenced by a comprehensive opinion, overruled the insurance company's motion for summary judgment; sustained plaintiff's motion for summary judgment, and awarded plaintiff, in accordance with his motion, judgment against the insurance company in the amount of $9,147.25, actually paid by plaintiff, with interest thereon at 6% per annum from November 4, 1963, through March 28, 1968, the date of the court's opinion, which interest amounted to $2,424.06, together with plaintiff's attorney's fee of $2,500, making the total judgment $14,071.35. Plaintiff's attorney's fee of $2,500 was due on November 4, 1963; however, the District Court did not allow interest on such sum from its due date, apparently for the reason that plaintiff had not actually paid it at that time, although it had been incurred as an expense definite in amount.

The issue here is simply whether the policy of insurance covered Earl White, the operator of the service station, at the time of the collision. It specifically covered him except for a provision of exclusion in the policy that the policy should not apply:

"to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured except a private automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile."

The policy defined the "automobile business": " 'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles."

The District Court held that the exclusion was not applicable in that the automobile was not being used in the business of Mr. White within the meaning of the exclusion. However, contrary to the holding of the court, appellant contends that appellee cannot recover since Mr. White, the operator of the service station, was using Mr. Crawford's automobile in Mr. White's automobile business at the time of the accident.

It is conceded that the operation of a service station falls within the term "servicing" as used in the definition of "automobile business" as defined in the policy heretofore quoted.

In construing this provision of the policy, "the relevant consideration in each case," as the District Court stated, "is the business in which the car was being used at the time of the accident and not the business of the person using the car." Pollard v. Safeco Insurance Co., 52 Tenn.App. 583, 376 S.W.2d 730. Was the automobile being used at the time of the accident as an adjunct or tool of the service-station business?

Appellant insurance company relies on Pollard v. Safeco Insurance Co., *supra*, in its contention that Mr. White was using Mr. Crawford's automobile in the "automobile business" of Mr. White at the time of the accident; that the exclusion provision in the policy applies; and that, therefore, the insurance company is not liable to Mr. White for damages resulting from the collision.

In *Pollard,* the insured was the owner and operator of a parking garage and, in response to a customer's request that his punctured tire be repaired, drove the customer's car ten blocks from his parking garage to a place where the tire repair could be made. During the course of this trip an accident occurred. The insurance policy contained an exclusion provision identical to the one in this case. In holding that the insured was not covered by his policy for damages resulting from that accident, the Tennessee Court of Appeals held:

> "We think it must be said that services of this kind rendered to business customers are incident to the business and it follows that while the car was being operated for that purpose it was being used for a purpose excluded by the policy.

> "Exclusionary clauses like the one here involved have been held reasonable because of the increased hazard growing out of the use of non-owned cars by such establishments while in their legal custody."

Appellee, however, contends that the *Pollard* case is distinguishable from the instant case since, in *Pollard,* the owner had turned the car over to the insured who was transporting the owner's punctured tire from the parking garage to a place where it could be repaired; that the insured had the custody of the owner's car and was using it as a delivery or service car at the time of the accident; and, for this reason, the exclusion provision was properly applicable.

In the instant case, the automobile was brought to Mr. White's service station for repair and, at the time of the accident, was being driven by the owner of the service station, accompanied by the owner of the car, for the purpose of determining what servicing or repairing was necessary.

The automobile was not turned over to Mr. White to be used in his business. He did not even have custody of the car, since the owner was accompanying him

in an attempt to find what was wrong with the operation of the car, and to ascertain what was necessary to remedy it. When an owner of an automobile brings it into a service station for servicing or repair, the service station operator, while repairing or servicing it, is not, thereby, using the car in his automobile business.

We are of the view that while the automobile was being driven by the service station operator at the time of the accident to determine what servicing it needed, it was not being used in the "automobile business." The exclusion provision of the insurance policy does not, therefore, apply and the insured, having the right of coverage, is entitled to judgment.

The District Court allowed interest only on the amount of the judgment and settlement paid by Mr. White. It did not allow interest on the amount of the attorney's fee and expenses, which Mr. White had admittedly incurred and which were stipulated to have been due on November 4, 1963.

The Tennessee Code provides:

> "47–14–108. *Time from which interest to be computed.*—The time from which interest may be computed shall be the day when the debt is payable, unless another day be fixed in the contract itself."

■ On verbal contracts, interest should be allowed from the date when the debt was due. Thompson v. French, 18 Tenn. 452, 453. This is a case dating from 1837, but the rule has never been changed.

The court decreed judgment for the amounts Mr. White had paid out, with interest thereon at 6%, as well as judgment for the amount of the attorney's fee of $2,500. The court said nothing about interest on this amount of the attorney's fee, but did not allow interest thereon from the date it was due although, in his declaration in the suit against the insurance company, Mr. White stated that the attorney's fee in the amount of $2,500

had become due on November 4, 1963, and he sued to recover this amount.

█ In reply to appellee's contention that he should be allowed interest on the above-mentioned attorney fee from the date it was due, it is to be observed that if appellee wishes to obtain an alteration or modification of the judgment by way of enlarging his rights, he must take his own appeal. In this case, if the appellee had wished to enlarge the amount of the judgment in his favor, he should have filed a cross-appeal. While this is a rule of practice and should be construed liberally in order to reach a "just" result, we find that the present case does not justify a waiver of the requirement of a cross-appeal by the appellee.

In accordance with the foregoing, the judgment of the District Court is affirmed.