**David ROSEN, Plaintiff-Appellant,**

**v.**

**Reginald W. GODSON, d/b/a Beach Tower and Franklin Nottage, Defendants,**

**The Travelers Indemnity Company, Garnishee-Appellee.**

**No. 27595.**

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1970.

Kenneth L. Ryskamp, Fuller & Brumer, Miami, Fla., for appellant.

George E. Bunnell, Gerard Pyszka, Miami, Fla., for appellee.

Before TUTTLE, COLEMAN, and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge.

This appeal presents us with the case of one who seeks to collect from his lia-

bility insurer for personal injuries sustained when run down by his own automobile. The District Court granted summary judgment for the insurer. We reverse.

On February 9, 1967, Mr. Reginald Godson owned the Beach Towers Apartment Hotel in Miami, Florida. The Beach Towers was covered by a policy issued by the Cosmopolitan Insurance Company.

Mr. David Rosen was a retail jeweler in Bangor, Maine, where he had lived for twenty-three years. He owned a 1967 Chrysler Newport automobile, covered by a liability policy issued by The Travelers Indemnity Company. For fifteen years Mr. Rosen had been a regular visitor to Miami and for five or six years he and Mrs. Rosen had stayed at the Beach Towers. Shortly after midnight on the morning of February 9, 1967, Mr. and Mrs. Rosen arrived at the Beach Towers for a two months stay.

At about 8:45 o'clock in the evening of February 9 Mr. Rosen drove his car to the side door of the hotel. He let Mrs. Rosen out and drove into a parking space maintained for guests of the apartment house. Cars were parked on each side so closely that he could not open the doors widely enough to get out. He backed the car out of the space. He was then approached by Franklin Nottage, who said that he was "an attendant on the lot" and offered to park the car. Being a nineteen year old boy, Nottage could get out a smaller place than the elderly Rosen, so Rosen accepted the offer. He made the mistake, however, of standing at the end of the parking space, across a low wall, to direct Nottage as he drove in, the purpose being to see that the new car did not get scratched. Nottage intended to step on the brakes but he hit the accelerator instead. Mr. Rosen was run down with his own automobile and his right leg was crushed. He remained in the hospital for three months and was away from work for eight months. His hospital and doctor bills amounted to $19,273.66.

Nottage, then nineteen years old, was a citizen of Nassau who had lived in Miami for some time. Mr. Dotson testified that on the very day of the accident he had employed Nottage "to park cars" for guests of the Beach Towers. This parking was done on ground belonging to, adjacent to, and a part of the Towers. Guests were charged no fee for this service and Nottage was to be paid three dollars a day and tips. Unfortunately, Nottage had no driver's license and had never driven a car on the public streets except a few times without his father's knowledge or permission. He had driven cars on the premises of a car wash place, where he had worked some months previously. He went to work at 4 o'clock but did not run Mr. Rosen down until 8:45.

Rosen contended that Nottage as the driver of the car with his express permission was a named insured within the terms of the Travelers policy. Travelers denied coverage. Rosen obtained a judgment against Nottage for $150,000 and then filed garnishment proceedings against Travelers. The garnishment was removed on diversity to the United States District Court which, as already stated, agreed that Nottage was not covered, hence this appeal.

There is no dispute about the facts. The Insurer relies upon the following exclusionary provisions of its policy:

" * * * an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business. * * *

'Automobile business' is defined, in part, as 'The business or occupation of * * * parking automobiles'."

In granting summary judgment for Travelers the District Judge held:

"The language of the exclusionary provision of Travelers' policy, is clear, unambiguous, and applicable to the uncontroverted facts of this case. The policy provides that there is no liability coverage regarding * * * an owned automobile *while used by*

*any person while such person is employed or otherwise engaged* in the automobile business * * * which includes 'the business or *occupation* of parking cars'. Under the policy, the emphasis is not placed upon the use to which the *car* is put but rather upon the activity of the person using the owned automobile. In the instant case, Nottage was unquestionably 'employed or otherwise engaged' in the 'occupation of * * * parking automobiles'."

This exclusionary clause is the only defense raised by Travelers.

The appellant, Rosen, says that the issue is whether a hotel is in the automobile business when it provides parking to its guests as an incidental service.

Travelers, emphasizing the latter part of the exclusionary language, counters that the issue is whether Nottage was in the occupation of parking cars and thus engaged in the automobile business within the terms of the definition.

■ Courts do not rewrite insurance policies, Merchants Company v. Hartford Accident and Indemnity Company, 187 Miss. 301, 188 So. 571, 192 So. 566 (1941). If the language in a policy is plain and unambiguous, there is no occasion for a court to construe it, Rigel v. National Casualty Company, Fla., 1955, 76 So.2d 285; Winter Garden Ornamental Nursery, Inc. v. Cappleman, Fla. App., 1967, 201 So.2d 479. The language used in an insurance policy is to be given its popular and usual significance, unless the context requires a different conclusion, Aetna Casualty and Surety Company v. Cartmel, 87 Fla. 495, 100 So. 802, 35 A.L.R. 1013 (1924); Goldsby v. Gulf Life Insurance Company, 117 Fla. 889, 158 So. 502 (1935); Continental Casualty Company v. Borthwick, Fla.App., 1965, 177 So.2d 687.

Ambiguous, equivocal, or uncertain terms of policy are to be construed most strongly against insured and liberally in favor of insured so as to effect dominant purposes, payment to insured, Boston Insurance Company v. Smith, Fla.

App., 1963, 149 So.2d 68; Beasley v. Wolf, Fla.App., 1963, 151 So.2d 679; Howard v. American Service Mutual Insurance Company, Fla.App., 1963, 151 So.2d 682.

The Supreme Court of Florida has many times announced the rule that the provisions of a policy of insurance which tend to limit or avoid liability are to be construed most liberally in favor of the insured and strictly against the insurer, National Auto Insurance Association v. Brumit, 98 So.2d 330, 332 (1957).

■ An insurer will not be allowed by the use of obscure phrases or exceptions to defeat purpose for which policy was procured, National Casualty Company v. General Motors Acceptance Corporation, Fla.App., 1964, 161 So.2d 848.

■ Where the terms of an insurance policy will bear two interpretations, that one will be adopted which sustains the claim for indemnity, Poole v. Travelers Insurance Company, 130 Fla. 806, 179 So. 138 (1938).

We find no case, and we have been cited none, in which the appellate courts of Florida have had an occasion to interpret such an exclusionary clause as applied to the facts presently before us.

Substantially the same question, however, was presented to the Sixth Circuit in Chavers v. St. Paul Fire and Marine Insurance Company, 1961, 295 F.2d 812. The only difference was that the exclusionary clause did not use the word "occupation" in the definition of parking automobiles as constituting an "automobile business". Upon mature reflection we agree with the holding in *Chavers* that such an exclusionary clause is inapplicable where an owner is struck by his own automobile while being parked by a restaurant employee in a lot adjacent to the restaurant and exclusively used at the time for the benefit of patrons of the restaurant at no cost to the patron. That is the situation we have before us, except that Rosen was a hotel guest rather than a restaurant patron.

The Beach Towers Apartment Hotel was neither in the automobile business

nor operating a parking lot within the popularly or commonly understood meaning of either term. It charged its guests no fee for parking. It parked no cars for the general public. It was assisting such of its residents as desired it, free of charge. It is quite inconceivable that any insured would buy a liability policy on his personal automobile if he is to lose his coverage every time he allows a paid attendant at his hotel, or at a wedding reception, or at a birthday party, or at a football game to park his car for him.

He should be subjected to such a loss only if the policy clearly says so in plain and unambiguous language. The element of a parking lot open to the general public upon payment of a fee, in which the automobiles are handled by drivers engaged solely for the purpose of performing a parking lot business, is wholly absent from this case.

■ We hold, therefore, that the language of this exclusionary clause is reasonably subject to more than one interpretation and that the insured is entitled to the benefit of the rule announced in Poole v. Travelers Insurance Company, *supra*.

We note that the Sixth Circuit has recently considered a similar exclusionary clause in White v. Travelers Indemnity Company, 416 F.2d 870 (October 14, 1969) and held it inapplicable.

The summary judgment will be reversed and the case remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

SIMPSON, Circuit Judge (dissenting):

With deference to the views of the majority I dissent.

The majority holding is based upon a claimed ambiguity in the exclusionary clause of the policy. In actuality the ambiguity does not exist; the policy language is clear. The two possible interpretations set forth by the majority are (a) that the term "automobile business" applies to the business of the employer (the hotel here) and (b) the term "automobile business" applies to the business of the driver of the automobile (Frank Nottage). The language of the exclusionary clause is:

" * * * an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business. * * * "

To my mind the words used by any *person* while such person is employed or otherwise engaged in the "automobile business" can refer to nothing except the business of the driver of the car, that is the *person* using the owned automobile. The business of the employer of the driver is simply not referred to in the exclusionary clause. The cases cited by the majority opinion are not apposite because the exclusionary language in those cases focuses upon the use to which the automobile is put as opposed to the occupation of the driver. I cannot put the case any clearer than did the trial judge:

"Under the policy, the emphasis is not placed upon the use to which the car is put rather upon on the activity of the person using the owned automobile. In the instant case, Nottage was unquestionably 'employed or otherwise engaged' in the 'occupation of * * * parking automobiles'."

I express no quarrel with the universal rule that contractual ambiguities in insurance policies must be resolved in favor of the insured and against the insurer. The rule simply has no application to the policy before us. The district judge was correct when he granted summary judgment for the garnishee-appellee. I would affirm the judgment below.