SPAULDIN ALLISON v. IOWA MUTUAL INSURANCE COMPANY

No. 7929SC7

(Filed 2 October 1979)

**Insurance § 71— comprehensive vehicle policy—exclusion of collision coverage—collapse of bridge**

The collapse of a bridge upon which insured's truck was being operated, resulting in the truck's sliding down into the water underneath the bridge and thereby being damaged, did not constitute a "collision" within the meaning of a comprehensive policy providing coverage for losses to the insured's vehicles arising from all causes except collision.

APPEAL by defendant from *Howell, Judge.* Judgment entered 16 August 1978 in Superior Court, HENDERSON County. Heard in the Court of Appeals on 18 September 1979.

This is a civil action wherein plaintiff seeks to recover $8,500.00 under a "general automobile liability" insurance policy for damages resulting to his dump truck when the bridge upon which the truck was traveling collapsed. Defendant answered, admitting that the policy was in effect on the date of the accident, but denying that it provided coverage for the type accident that occurred. A stipulation entered into between the parties, except where quoted, is summarized as follows:

Defendant issued an insurance policy, numbered G2075509, to plaintiff on 10 February 1975, which provided comprehensive insurance coverage on certain personal property owned by plaintiff, but did not extend collision coverage. On 31 October 1975 the plaintiff was the owner of a 1970 white, two-ton dump truck, Serial No. 735485, which was included in the personal property covered by the policy, and which was "being operated across the South Mills River Bridge No. 185 on Highlander Camp Road . . . transporting a load of gravel." As the truck was being driven across the bridge, "said bridge collapsed and the plaintiff's truck slid into the river or creek running under said bridge and turned on its right side, therein damaging said vehicle." The truck was subsequently repaired at a cost of $8,500.00. Plaintiff in due time submitted a claim to defendant for the total repair of the truck, but, except for paying $111.00 to repair the windshield, defendant "has refused to pay said claim taking the position that said

damage was caused by collision and was not covered under . . . the aforesaid policy. . . ."

After considering the above stipulation, the trial judge made findings of fact in accordance therewith, drew separate conclusions of law, and entered judgment for plaintiff in the amount of $8,500.00. Defendant appealed.

*Lee Atkins for plaintiff appellee.*

*Morris, Golding, Blue and Phillips, by James N. Young and Jim Golding, for defendant appellant.*

HEDRICK, Judge.

Defendant's exceptions to each of the trial judge's conclusions of law present for review the single question of whether the court erred in entering judgment for plaintiff. The question is not whether plaintiff's truck was covered under the policy. It was. Rather, the question is whether the event which gave rise to the damage is excluded from the kind of loss for which the policy provides protection.

Defendant argues that the collapse of the bridge resulting in damage to plaintiff's truck was an accident by collision and that the occurrence was therefore excluded from coverage since the plaintiff had not insured this vehicle against loss by collision. Plaintiff, on the other hand, contends that the collapse of the bridge did not constitute a collision and asserts that the policy includes such an occurrence under its provisions for comprehensive coverage. The relevant inquiry for this Court is thus refined into determining whether the trial judge erred in concluding that the accident occasioned by the collapse of the bridge was not a "collision" within the meaning of the policy which provides in pertinent part as follows:

> 1. The company will pay for loss to covered automobiles: COVERAGE O — COMPREHENSIVE—*from any cause except collision;* but, for the purpose of this coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, windstorm, hail, earthquake, explosion, riot or civil commotion, malicious mischief or vandalism, water, flood, or (as to a covered automobile of the private passenger type)

colliding with a bird or animal, shall not be deemed loss caused by collision. . . . [Emphasis added.]

Elsewhere the policy defines "collision" to mean "(i) collision of a covered automobile with another object or with a vehicle to which it is attached, or (ii) upset of such covered automobile. . . ."

The principles of law with respect to the interpretation and construction of insurance policies are firmly established. As with any contract, the ultimate goal is to divine the parties' intentions at the time the policy was issued. *Woods v. Nationwide Mutual Insurance Co.*, 295 N.C. 500, 246 S.E. 2d 773 (1978). Where the policy defines a term, that definition must be used. Conversely, nontechnical words which are not defined "are to be given the same meaning they usually receive in ordinary speech, unless the context requires otherwise." *Grant v. Emmco Insurance Co.*, 295 N.C. 39, 42, 243 S.E. 2d 894, 897 (1978) [citing *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E. 2d 518 (1970); *Insurance Co. v. Shaffer*, 250 N.C. 45, 108 S.E. 2d 49 (1959); *Powers v. Insurance Co.*, 186 N.C. 336, 119 S.E. 481 (1923)]. Moreover, if the meaning of the language *"or the effect of provisions* is uncertain or capable of several reasonable interpretations," *Woods v. Nationwide Mutual Insurance Co.*, 295 N.C. at 506, 246 S.E. 2d at 777 [emphasis added], such ambiguity will be resolved in favor of the insured and against the insurance company since, as it is said, the company chose the language. *Grant v. Emmco Insurance Co., supra.*

In the instant case, although the policy sets out three types of occurrences that are deemed to constitute a collision, the term itself is not defined. The word is popularly understood, however, to mean a striking together of two objects. "The term denotes the act of colliding; striking together; violent contact. . . .[It] implies an impact or sudden contact of a moving body with an obstruction in its line of motion, whether both bodies are in motion or one stationary . . . ." Black's Law Dictionary 330 (4th ed. 1968). *See also Morton v. Blue Ridge Insurance Co.*, 255 N.C. 360, 121 S.E. 2d 716 (1961).

In 7 Am. Jur. 2d, *Automobile Insurance* § 65 (1963), it is said:

While the ground of a highway is considered an "object" within the meaning of a collision insurance policy, it is

generally held that contact of an automobile with the roadbed itself does not constitute a "collision" with an object within the meaning of the term as used in a collision insurance policy.

Furthermore, in a case which presents strikingly similar facts to the case at bar, the Florida Supreme Court held that the giving way of the roadbed over which the plaintiff's car was traveling, resulting in the car's sliding down into the soft sand under the road and getting stuck, was not a collision within the popular and usual meaning of the term. *Aetna Casualty & Surety Co. v. Cartmel,* 87 Fla. 495, 100 So. 802 (1924).

With reference to defendant's contention that the event giving rise to the damage in this case was a "collision", we have carefully considered each case upon which defendant purports to rely and find only one of them to be worthy of comment. Our Supreme Court held, in *Morton v. Blue Ridge Insurance Co., supra,* that a collision, within the meaning of that term as used in the policy being construed there, resulted when the plaintiff's automobile suddenly rolled backwards into a canal. The car had been backed down a launching ramp to launch a boat from a trailer hooked to the rear of the car. While the driver and passengers were lowering the boat into the water, the unattended and previously stationary car suddenly rolled into the water. When the insurance company refused to honor his claim, plaintiff brought suit, and the Court held that the car's striking of the water in the canal and of the bottom of the canal was a collision, entitling plaintiff to recover under the collision provisions of the policy.

We find this case to be readily distinguishable on its facts. The impetus for the accident in *Morton* was obviously occasioned by the manner in which the vehicle was being used. Although there was no evidence regarding what caused the car to suddenly roll backwards, the driver had driven it onto and parked it on the ramp, thereby initiating the chain of events that culminated in the collision of his car with the bottom of the canal. Conversely, in the present case, there is plainly no element of driver control. Nothing the operator of the truck did can be said to have set in force the succeeding events. The collapse of the bridge, and that occurrence only, engendered the consequent accident and damage.

We think the cases are clearly distinguishable and find that *Morton* case to be inapposite.

In the case at bar, we hold that the collapse of the bridge upon which plaintiff's truck was being operated, resulting in the truck's sliding down into the river or creek underneath the bridge and thereby being damaged, was not a "collision" either within the usual meaning of the term or as contemplated by the policy and the parties. Since it is not disputed that the policy provides coverage for losses arising from all causes except collision, it follows that the losses suffered under the circumstances here are covered, and the company is liable on plaintiff's claim. Thus, in the conclusions and judgment of the trial judge, we find no error.

Affirmed.

Judges CLARK and MARTIN (Harry C.) concur.