# MUTUAL BEN. HEALTH & ACCIDENT ASS'N v. DIXON.—180 S. W. (2d), 426.

Middle Section.   March 18, 1944.

Petition for Certiorari denied by Supreme Court, May 6, 1944.

Clint Beasley, of Carthage, and Walker & Hooker, of Nashville, for appellant.

Solon Fitzpatrick, of Carthage, for appellee.

HICKERSON, J.  Only one question is presented by this appeal, and that is a question of law: The proper construction of the insurance policy which is the basis of this suit.

There is no controversy about the facts.  Appellant, who was defendant below, issued a policy of insurance to Ottis G. Dixon, appellee, who was complainant below. The purpose of the insurance policy was expressed in these words which appear on the back of the policy and at the beginning of the policy on its face: "This policy provides benefits for loss of life, limb, sight or time, by accidental means, or loss of time by sickness *as herein limited and provided*."  (Italics in this opinion are added.)

The insured had an accident, within the terms of the policy, that resulted in a hernia; and from this injury the insured was totally disabled.  The injury did not cause

him to be continuously within doors, but did require regular medical attention.

Under these conditions the insured contended that he was entitled to the disability benefits provided in Part "D" of the policy.

To the contrary, the insurance company contended that the insured was entitled to the disability benefits provided under Part "L" of the contract.

■ An insurance contract must be construed as a whole, and effect must be given to every part of it if that can be done. Stoops v. First American Fire Insurance Company, 160 Tenn., 239, 22 S. W. (2d), 1038; Laurenzi v. Atlas Insurance Company, 131 Tenn., 644, 176 S. W., 1022; Karney v. Reliance Insurance Company, 9 Tenn. App., 456; Order of United Commercial Travelers of America v. Edwards, 10 Cir., 51 F. (2d), 187. A full statement of the rule is found in 29 Am. Jur., 176, section 160, which we quote:

"Consideration of Entire Context of Policy.—In determining the intention of the parties to an insurance policy, the policy should be considered and construed as a whole, and if it can reasonably be done, that construction will be adopted which will give effect to the whole instrument and to each of its various parts and provisions. Seeming contradictions should be harmonized if reasonably possible. A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent. Accordingly, in determining the meaning of a provision of a liability policy with respect to liability for interest on a judgment recovered against the insured, the court is not limited to consideration of the provision alone, but must con-

strue the policy in its entirety, endeavoring, if possible, to ascertain the mutual intention of the parties as it existed at the time of the execution of the instrument.''

█ If a contract of insurance is ambiguous in its terms it must be construed most favorably to insured; but plain provisions of the policy, taken as a whole, must be enforced as stated. Great Eastern Casualty Company v. Solinsky, 150 Tenn., 206, 263 S. W., 71, 35 A. L. R., 1007; Inman v. Life & Accident Insurance Company, 164 Tenn., 12, 45 S. W. (2d), 1073; Berry v. Prudential Life Insurance Company of America, 23 Tenn. App., 485, 134 S. W. (2d), 886; Travelers Insurance Company v. Ansley, 22 Tenn. App., 456, 124 S. W. (2d), 37.

''Ambiguous'' is defined in 3 C. J. S., 1037, as follows:

'' The word has been defined as capable of being under-stood in more senses than one; obscure in meaning through indefiniteness of expression; having a double meaning; doubtful and uncertain; meaning unascertain-able within the four corners of the instrument; open to construction; reasonably susceptible of different con-structions; uncertain because susceptible of more than one meaning. Its synonyms have been said to be 'doubt-ful,' 'equivocal,' 'indefinite,' 'indeterminate,' 'indistinct,' 'uncertain,' and 'unsettled.' ''

We shall now consider the policy contract, bearing in mind these rules of construction. This policy is divided into five main parts or divisions, as follows:

*The Insuring Clause*: ''Mutual Benefit Health and Ac-cident Association hereby insures Ottis G. Dixon (Herein called the Insured) of City of Monoville, State of Ten-nessee, against loss of life, limb, sight or time, sustained or commencing while this policy is in force, resulting directly and independently of all other causes, from bodily injuries sustained during any term of this policy,

through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time beginning while this policy is in force and caused by disease contracted during any term of this policy, respectively, subject, however, to all the provisions and limitations hereinafter contained.''

*Accident Indemnities*: ''Part D. Total Accident Disability Benefits for Life. If such injuries, as described in the Insuring Clause, do not result in any of the above mentioned specific losses but shall wholly and continuously disable the Insured for one day or more, the Association will pay a monthly indemnity, as hereinafter provided, at the rate of Fifty ($50.00) Dollars per month for the first fifteen days and at the rate of One Hundred ($100.00) Dollars per month thereafter, so long as the Insured lives and suffers said total loss of time.''

*Illness Indemnities*: ''Part K. Confining Illness Disability Benefits for Life. If disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, confines the Insured continuously within doors and requires regular visits therein by a legally qualified physician, the Association will pay a monthly indemnity, as hereinafter provided, at the rate of Fifty ($50.00) Dollars per month for the first fifteen days and at the rate of One Hundred ($100.00) Dollars per month thereafter, for one day or more, so long as such confinement remains continuous; provided said disease causes total disability and necessitates total loss of time.

''Part L. Non-Confining Illness Disability Fifty Dollars Per Month. If disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, does not confine the Insured continuously within doors, but requires regular medical

attention, the Association will pay a monthly indemnity at the rate of Fifty ($50.00) Dollars per month, but not exceeding three months; provided said disease necessitates continuous total disability and total loss of time.''

*Standard Provisions*: Under this heading are included seventeen different paragraphs, none of which are in controversy here.

*Additional Provisions*: ''(a) This policy does not cover death, disability, or other loss sustained in any part of the world except the United States, Canada, Alaska and Hawaii, or caused by war or any act of war or suffered while in military or naval service of any country at war, or while the Insured is not continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself; nor does this policy cover disability or other loss while the Insured is suffering from insanity, mental infirmity, syphilis or venereal disease; or if the Insured be a woman, childbirth, pregnancy or complications arising therefrom. *Any accidental injury resulting in hernia, apoplexy, sunstroke or heatstroke, or sprained or lame back will be paid for only as provided in Parts K and L.* Disability resulting from tuberculosis, heart trouble or disease of organs which are peculiar to women shall be covered only if the disease originates after the policy has been in force six (6) months from the date of issue.''

Confining our inquiries strictly to the question in the instant case, shall the provision in the foregoing paragraph under the ''Additional Provisions'' of the policy which reads, ''Any accidental injury resulting in hernia . . . will be paid for only as provided in Parts K and L,'' be given effect as a valid provision of the policy

or shall it be held void as repugnant to Part "D" under "Accident Indemnities"?

■ "The parties to accident insurance contracts have the right and power to contract for what accidents and risks the company shall and shall not be liable, and the courts may not make new or different contracts for them." 29 Am. Jur., 706, section 930.

■ "An insurer of life may make such exceptions from the risk assumed as it sees fit, in the absence of any statutory provision or public policy to the contrary." 29 Am. Jur., 691, section 905.

In Williams v. Interstate Life & Accident Insurance Company, 163 Tenn., 262, 43 S. W. (2d), 215, our Supreme Court held that a provision which limited liability in event the insured died during the first year of the policy from a specified cause was a valid provision.

■ The exception in the policy under consideration is set out in emphasized type. The general heading or division of the policy under which it appears—"Additional Provisions"—is written into the policy in exactly the same type as the other general divisions. We see nothing ambiguous about the terms of the policy. Taking the policy as a whole, it means that the insured under Part "D" may have the benefits provided therein; but these benefits do not apply under the "Additional Provisions" if the injury upon which the insured claims disability benefits resulted in hernia. Since it is admitted that the injury which insured sustained did result in a hernia and his total disability was caused thereby, and he is not continuously confined within doors, the insured is entitled to the benefits provided under Part "L" of the contract.

The insurance company had a right to except a hernia caused by accident from the coverage under Part "D"

of its policy and it did so in language which is so plain that the meaning cannot be misunderstood. That exception is as much a part of the policy contract as any other part of it and we must give full force and effect to it. A decree will be entered in this Court in favor of complainant for $150 with interest from the entry of the decree in the Chancery Court and the costs of the cause in the Chancery Court. The costs of the appeal will be taxed against complainant.

Felts and Howell, JJ., concur.