177 So.2d 687 (1965)
CONTINENTAL CASUALTY COMPANY, a foreign corporation, Appellant,
v.
Sherry BORTHWICK, a minor, by Alexander a Borthwick, her father and next friend, Appellee.
No. F-490.
District Court of Appeal of Florida. First District.
July 27, 1965.
Rehearing Denied August 30, 1965.
Alfred A. Green, Jr., Daytona Beach, for appellant.
William E. Loucks, of Law Offices of Wesley A. Fink, Daytona Beach, for appellee.
CARROLL, DONALD K., Judge.
The defendant in an action on its policy of school insurance has appealed from a final judgment entered by the Circuit Court for Volusia County, based upon a jury verdict for the plaintiff.
The basic question for our determination in this appeal is whether at the trial *688 sufficient evidence was presented from which the jury could have lawfully concluded that the plaintiff at the time of her injury was in a group that was "under supervision of proper authority of the school" as required for liability in the said policy.
The facts are not in dispute. At the time of her injury the plaintiff, Sherry Borthwick, a minor, was a student at Seabreeze Senior High School in Daytona Beach, Florida, and was an insured under a policy issued by the defendant providing what is commonly called "school insurance." This policy provides coverage: "While traveling directly to and from such regularly scheduled and approved school activity with other students of such school as a group, provided such group is at the time under supervision of proper authority of the school, if a student. * * *"
In this appeal the insurer concedes in effect that the evidence of the circumstances surrounding the accident that befell Sherry is sufficient to show her entitlement to recover under the quoted provision of the policy, except that the said evidence is insufficient to show that at the time of the accident her group was "under supervision of proper authority of the school," as required in the proviso clause of the above-quoted provision, and hence she cannot be entitled to recover under the policy.
The undisputed facts established by the evidence at the trial and pertinent to the said question whether at the time of the accident Sherry's group was under the required "supervision," are essentially as follows:
At the times pertinent to this cause Seabreeze Senior High School had a girls swimming team but no swimming pool and no means of transporting the team to the Welch Pool, a private facility located in the said city, which pool the school customarily used for its water sports activities. The school's swimming coach, who was responsible for the said team, organized a car pool arrangement of the type regularly used as a part of the scheduled athletic program for a number of sports. Usually about four cars were necessary for the girls swimming team, which cars were driven by parents, students, and the coach. While the coach did not direct the exact route which the cars were to take, he did advise the drivers to take the less-traveled streets to the said pool. The drivers of the cars, when not actually members of the team, were considered a part of the team and admitted free to the swimming meets. On the day before such meets, the coach reminded the girls of their responsibility to furnish transportation, urging them to make arrangements as to which car each would ride in, and to drive carefully and go directly to the pool. He did not allow them to stop at any place along the way to the pool except at the homes of certain girls who lived near the school and had obtained his permission to stop at their homes in order to pick up their swimming suits or other articles on the way to the pool.
On the day in question a swimming meet with another high school was scheduled by the Seabreeze Senior High School to be held at the Welch Pool, and the girls swimming team was to participate. Sherry, a member of that team, was driving her father's car, which was one of the automobiles in the above-mentioned car pool, with the consent of the coach. Besides her, five girls were riding in her car, four of them being members of the girls swimming team (two of whom were Sherry's sisters), and the fifth being a student in their school who was not on the team. Sherry's automobile was proceeding directly toward the Welch Pool on the route usually taken. Although the cars carrying members of the girls swimming team did not usually travel together, another of such cars was immediately in front of Sherry's car at the time of the collision between her car and another automobile at a street intersection. As a result of the collision Sherry received serious personal injuries. The swimming coach did not know of the accident until he was advised of it at the Welch Pool.
*689 After the insurer had denied liability under its said policy, Sherry Borthwick, by Alexander A. Borthwick as her father and next friend, filed in the Circuit Court the instant action against the insurer to recover for her injuries under the said policy of school insurance. The case was tried before a jury. The trial court denied the insurer's motion for a directed verdict, and submitted the issues to the jury, which brought in a verdict for the plaintiff in the amount of $4,156.70. Upon the basis of this verdict, the trial court entered a final judgment against the insurer, which then took this appeal from the judgment.
The outcome of this litigation patently turns upon the construction to be given the word "supervision" in the policy provision quoted above. The appellant herein, the insurer, recognized that the established rule of construction is that insurance policy restrictions are to be construed strictly in favor of the insured and against the insurance company, but the insurer strongly stresses the fact that that rule applies only when the terms of such restrictive provisions are ambiguous. This contention is well made, for, as this court held in O'Brien v. Halifax Ins. Co. of Mass., 141 So.2d 307 (1962):
"In this appeal the plaintiff-appellant invokes the rule that insurance policy restrictions are to be construed in favor of the insured and against the insurance company. That rule is well established, but it is equally well established that this rule applies only where the terms of the restrictive provisions in the policy are ambiguous."
The appellant here then contends that the word "supervision" in the policy before us is unambiguous and capable of only one construction, but the appellant does not undertake to define the word "supervision," being evidently content to argue that the facts proven in this case do not amount to supervision and that, if supervision means the general supervision such as a school principal has over all school activities, the said policy provision would have no meaning, citing the decision of the Third District Court of Appeal in Howard v. American Service Mutual Ins. Co., 151 So.2d 682 (1963), for the rule that a court should not interpret a policy provision in such a way as to make it meaningless. We recognize the last rule, of course, but we consider that the construction which we will give in this opinion to the policy provision in question will not render such provision meaningless.
A reference to recognized lexicographies reveals that the word "supervision" is capable of definition  that is, by the use of general, comprehensive words. For example, in Webster's Collegiate Dictionary, the definition of supervision is two-fold: namely, as "Act of supervising" and as "The direction and critical evaluation of instruction, esp. in public schools." In the same work the word "supervise" as an intransitive verb is defined as "To exercise supervision" and as a transitive verb is defined as "To oversee for direction; to superintend; to inspect with authority." Turning back to the word "oversee" in the same dictionary, we find among the definitions "to superintend; supervise." Other dictionaries also resort to general words in defining the word supervision.
Words used in insurance policies should be given their natural, commonly-understood meaning. As the Supreme Court of Florida said in Aetna Casualty & Surety Co. v. Cartmel, 87 Fla. 495, 100 So. 802, 35 A.L.R. 1013 (1924), the language used in a policy of insurance "is to be given its popular and usual significance, unless the context requires a different construction."
In the case at bar the appellant prepared and inserted in its policy the provision in question, and must be presumed to have deliberately elected to include therein the general, vague, and comprehensive word "supervision" without using any qualifying adjectives or phrases that would limit the scope of the word with such adjectives as *690 "personal," "immediate," or "direct." The appellee appropriately suggests in her brief that, if the appellant intended in such provision that for coverage the vehicle must be operated under "direct control," "in-the-car control," or "immediate supervision and control of a school employee," the appellant should have said so by using such language or by restrictively defining the word "supervision."
As mentioned above, if the word "supervision" in the restrictive provision in the policy before us is ambiguous, that provision, pursuant to the rule established in Florida and elsewhere, must be liberally construed in favor of the insured and strictly construed against the insurer.
"Ambiguity" has been variously defined by the courts of our land, but probably the most common definition is that which was stated by the Supreme Court of Florida in Friedman v. Virginia Metal Products Corp., 56 So.2d 515 (1962), holding that a word or phrase in a contract is "ambiguous" only "when it is of uncertain meaning, and may be fairly understood in more ways than one." See also Atlas Sewing Center, Inc. v. Belk's Dept. Store, 162 So.2d 274 (Fla.App. 1964).
Among the many definitions of "ambiguous" found in decisions from other jurisdictions, which decisions seem especially helpful in our present consideration, are the following decisions from Tennessee and Washington:
In Mutual Benefit Health & Accident Association v. Dixon, 27 Tenn. App. 312, 180 S.W.2d 426 (1944), the Tennessee Court of Appeals said that the word "ambiguous," as applied to an insurance policy, may mean "obscure in meaning through indefiniteness of expression; having a double meaning; doubtful and uncertain * * *."
More specifically, the Supreme Court of Washington held in the recent case of Washington Restaurant Corp. v. General Ins. Co. of America, Wash., 390 P.2d 970 (1964), that, "if the insuring language is ambiguous, i.e., if reasonable men could differ as to whether it fairly covered the loss sustained, then the insured must prevail."
Following the guidelines furnished by the foregoing definitions, we think that the word "supervision," as used in the restrictive provision of the policy before us, is ambiguous because it is of an uncertain meaning and may fairly be understood in more ways than one; because the said word is obscure in meaning through indefiniteness of expression; and because reasonable men could differ as to whether the said insuring language fairly covers the loss sustained by the plaintiff in the case at bar.
Since we have concluded that the policy provision before us is ambiguous, that provision, under the established rule, must be construed most liberally in favor of the insured, the appellee, and most strictly against the insurer, the appellant. We further hold that the evidence adduced at the trial was legally sufficient to support the conclusion of the jury as reasonable men that the plaintiff, Sherry Borthwick, at the time of her injury was in a group that was "under supervision of proper authority of the school," and hence it was a question of fact for the jury to determine as to whether the defendant-insurer is liable under its policy of school insurance.
The strongest case cited by the appellant in support of its position on this appeal is Charles v. American Progressive Health Insurance Co. of New York, 127 So.2d 459 (Fla.App. 1961). In that case Charles, the insured under a policy of school insurance, was involved in an accident while operating his motor scooter to the site of a school softball game in which he was scheduled to participate. Due to insufficient automobile transportation, the coach of the softball team permitted several boys, including Charles, to take their motor scooters to the game. The student policy issued by the insurance company provided coverage to insured students while *691 "* * * riding as a group to or from a regular scheduled school activity in a vehicle selected by and operated under the supervision of duly delegated school authorities." Charles, by his father and next friend, brought an action on the policy against the insurer in the Civil Court of Record for Dade County, which court entered a summary judgment in favor of the defendant, and Charles appealed to the District Court of Appeal, Third District of Florida. Without elaborating on the facts as we stated them above and without discussing in detail the applicable law, the appellate court affirmed the judgment appealed from.
We do not consider that the Third District Court of Appeal's holding in the Charles case, supra, is controlling or even pertinent to the problem confronting us in the case at bar. In the first place, the language in the critical provision of the policy before us is much broader in scope ("provided such group is at the time under supervision of proper authority of the school") while the provision in the Charles case restricts the word "supervision" to the operation of the "vehicle selected" by the duly delegated school authorities. The second and probably more decisive distinction is that in the appellate court's statement of the facts in its opinion in the Charles case, there is no mention of anything that would indicate that Charles was riding in a group at the time of his accident, and riding in a group was essential to his recovery under the policy  and this was no doubt the basis for the trial and appellate courts' holding in the Charles case. In the present case, of course, it is established without contradiction that the plaintiff was riding in a group at the time of her accident.
In this appeal the appellee has filed a motion for an award of attorney's fees for services rendered in this appeal. By an order, filed herein simultaneously with this opinion and judgment, the said motion is denied on the authority of Boston Insurance Co. v. Smith, 149 So.2d 68 (Fla.App. 1963), and the cases cited therein, holding that Sec. 627.0127, Florida Statutes, F.S.A., does not authorize the allowance of an attorney's fee in defending a judgment on appeal.
For the foregoing reasons, the final judgment appealed from herein, being based upon the jury verdict discussed above, must be and it is
Affirmed.
WIGGINGTON, Acting C.J., and STURGIS, J., concur.