Mr. Joe Horn Mount County Attorney Hillsborough County Post Office Box 1110 Tampa, Florida 33601
Dear Mr. Mount:
This is in response to your request for an opinion of this office addressing several matters relating to the Hillsborough County Charter which you ask to have "clarified." Specifically, I gather from your inquiry that you are asking substantially the following questions:
 1. MAY THE BOARD OF COUNTY COMMISSIONERS OF A COUNTY CHARTERED PURSUANT TO THE OPTIONAL COUNTY CHARTER LAW, PART IV, CH. 125, F.S., APPOINT AS CLERK TO THE BOARD SOMEONE OTHER THAN THE CLERK OF THE CIRCUIT COURT?
 2. MAY THE EXECUTIVE POWERS AND DUTIES DESCRIBED IN s 125.85(5), F.S., BE DIVIDED AND SEPARATED FROM THOSE ASSIGNED TO AND VESTED IN THE COUNTY ADMINISTRATOR BY THE CHARTER?
 3. DOES CH. 78-528, LAWS OF FLORIDA, AS AMENDED BY CH. 79-475, LAWS OF FLORIDA, HAVE ANY VALIDITY ONCE CHARTER GOVERNMENT GOES INTO EFFECT IN HILLSBOROUGH COUNTY?
 4. WHAT IS THE VALIDITY AND EFFECTIVENESS OF SECTIONS 9.01 AND 10.05 OF THE HILLSBOROUGH COUNTY CHARTER, PURPORTING TO LIMIT THE EFFECTIVENESS OF CERTAIN LAWS OF FLORIDA AND PERMITTING THE MODIFICATION AND REPEAL OF CERTAIN OTHER LAWS, RESPECTIVELY?
Your inquiry states that the Hillsborough County Board of County Commissioners proposed a home rule charter for the governance of the county by ordinance in 1983, pursuant to Part IV of Ch. 125, F.S., the Optional County Charter Law. The proposed charter was approved in a referendum of the county's electors on September 29, 1983, and the charter by its terms is to take effect "when the commissioners elected at the 1984 general election take office." Section 10.04, Hillsborough County Charter (hereafter, "Charter"). You further state that charter government will go into effect in Hillsborough County on May 28, 1985, when the commissioners take office.
QUESTION ONE
Section 125.86, F.S., provides in pertinent part as follows:
 The legislative responsibilities and power of the county shall be assigned to, and vested in, the board of county commissioners and shall consist of the following powers and duties:
* * *
 (3) Appoint a clerk to the board who shall serve at its pleasure and keep the records and minutes of the board;
* * *
 (8) All other powers of local self-government not inconsistent with general law as recognized by the Constitution and laws of the state and which have not been limited by the county charter. (e.s.)
By use of the imperative "shall" in s 125.86, F.S., it appears that the Legislature intended that no alteration of or deviation from the responsibilities, functions, powers and duties prescribed by it be made in the formulation and adoption of an optional county charter or optional form of county government pursuant to Part IV of Ch. 125, F.S. Attorney General Opinion 81-7. See, s125.83(1), F.S., stating that the county charter adopted pursuant to Part IV of Ch. 125 "shall clearly define the responsibility for legislative and executive functions in accordance with the provisions of this chapter." (e.s.) See also, s 1(g), Art. VIII, State Const. (charter counties have such powers of self-government not inconsistent with general law). Thus, even though the Charter does not expressly incorporate the provisions of s 125.86, it would appear that such provisions apply to counties chartered pursuant to Part IV of Ch. 125, such that the board of county commissioners of such chartered county may "[a]ppoint a clerk to the board. . . ."
With respect to the board's authority to appoint someone other than the clerk of the circuit court as clerk to the board, I note that s 1(d), Art. VIII, State Const., provides in pertinent part that, "[w]hen not otherwise provided by county charter or special law approved by vote of the electors, the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds." (e.s.) I am not aware of any provision of the Charter or of any special law approved by vote of the electors which operates to alter the constitutional duties of the Clerk of the Circuit Court of Hillsborough County, nor have you drawn my attention to such a provision. Neither am I aware of any general or special law dividing the duties of the Clerk of the Circuit Court for Hillsborough County between two officers, one serving as clerk of court and one serving as ex officio clerk of the board of county commissioners, auditor, recorder, and custodian of all county funds. See, s 16, Art. V, State Const. Accordingly, I am unable to conclude that either the Charter or the authority granted by s125.86(3), F.S., to the board of county commissioners to appoint a clerk to the board operates to divest the clerk of the circuit court of his constitutional duties to act as ex officio clerk to the Hillsborough County Board of County Commissioners. See, Alachua County v. Powers, 351 So.2d 32, 35-36 (Fla. 1977). See also, s 1.02 of the Charter, providing that "this Charter does not affect . . . any constitutional officer, [including] clerk of the circuit court, . . . and the relationship of the county government to [such officers] shall be the same as it would have been if this Charter had not been adopted." And see, AGO 81-7, concluding that charter government may be established pursuant to Part IV of Ch.125, F.S., if constitutional officers retain their present status.
It would appear that if s 125.86(3), F.S., is construed as authorizing the board of county commissioners to appoint someone other than the clerk of the circuit court to perform exclusively any of the clerk's constitutional duties, such a provision could be constitutionally suspect in the absence of provision in the charter or special law approved by vote of the electors to the contrary. Cf., AGO's 81-7 and 77-88, concluding that the requirement of s 125.83(4), F.S., that a charter provide for the setting of salaries of county officers by ordinance was constitutionally suspect in light of the provision of s 5(c), Art. II, State Const., that the compensation or salaries of all county officers of all counties, charter or noncharter, "shall be fixed by law." However, it is well-settled that a statute should be construed or interpreted so as to make it constitutional and thus to uphold its validity. See, e.g., Hiers v. Mitchell, 116 So. 81
(Fla. 1928); State ex rel. Ervin v. Cotney, 104 So.2d 346
(Fla. 1958); Miami Dolphins Ltd. v. Metropolitan Dade County,394 So.2d 981 (Fla. 1981). Thus, I am of the view that while the board of county commissioners may pursuant to s 125.86 (3) appoint someone other than the clerk of the circuit court as clerk to the board, where no charter provision or special law approved by vote of the electors provides for such appointed clerk to assume any of the constitutional duties of the clerk of the circuit court to the exclusion of the performance of such duties by the constitutional officer, such appointment has no effect on the constitutional duties of the clerk of the circuit court who continues to serve as ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds. See, Alachua County v. Powers, supra, at 37, and State ex rel. Landis v. Wheat,137 So. 277, 283 (Fla. 1931), stating that the duties of a statutory officer may supplement and perhaps duplicate the statutory duties of clerk of the circuit court but cannot relieve clerk of duties prescribed by law or Constitution: "A mere duplication of official duties may not be a violation of the general intendments of the Constitution when statutory regulation of duties is authorized by the Constitution. If there is duplication of duties, no organic provision is violated."
Accordingly, until and unless legislatively or judicially determined otherwise, I am of the opinion that the board of county commissioners of a county chartered pursuant to the Optional County Charter Law, Part IV, Ch. 125, F.S., may appoint as clerk to the board someone other than the clerk of the circuit court, but that such appointment does not affect the constitutional duties of the clerk of the circuit court in the absence of a charter provision or special law approved by vote of the electors to the contrary, or a special or general law dividing the duties of the clerk of the circuit court between two officers.
QUESTION TWO
Section 125.85, F.S., provides in pertinent part as follows:
 The executive responsibilities and power of the county shall be assigned to, and vested in, the appropriate executive officer, pursuant to the optional form adopted under s. 125.83, and shall consist of the following powers and duties:
* * *
 (5) Supervise the collection of revenues, audit and control all disbursements and expenditures, and prepare a complete account of all expenditures;
* * *
 (13) Any other power or duty which may be assigned by county charter or by ordinance or resolution of the board. (e.s.)
Additionally, s 5.01 of the Charter provides that "[t]he executive responsibilities and powers of local self-government of the county not inconsistent with this Charter shall be assigned to and vested in the county administrator." (e.s.)
Again, the Legislature's use of the mandatory term "shall" in s125.85, F.S., appears to require the incorporation of the executive responsibilities and powers set forth therein into whichever of the three forms of charter government is adopted by a county which chooses to proceed with charter government pursuant to Part IV of Ch. 125, F.S., notwithstanding the failure of the charter document to expressly include or define those responsibilities and powers. See, AGO 81-7 and s 125.83(1), F.S. And see, s 1(g), Art. VIII, State Const. As you have noted, however, s 125.85(5), F.S., in enumerating the executive responsibilities assigned to and vested in the "appropriate executive officer" to "[s]upervise the collection of revenues, audit and control all disbursements and expenditures, and prepare a complete account of all expenditures," describes certain constitutional duties of the elected tax collector and clerk of the circuit court. Accordingly, in view of the provisions of s1.02 of the Charter providing that the Charter does not affect any constitutional officer, you ask whether the enumerated executive responsibilities and powers may be divided and separated from those assigned to and vested in the county administrator by the Charter with particular respect to s 125.85(5). It would appear that your question ultimately asks whether the tax collector and the clerk of the circuit court are the "appropriate executive officer[s]" contemplated by s 125.85.
I am unable to conclude that the reference in s 125.85, F.S., to "the appropriate executive officer, pursuant to the optional form adopted under s. 125.83," refers to elected constitutional officers who, under the terms of s 1.02 of the Charter, retain their status and constitutional duties such that "the relationship of the county government to them shall be the same as it would have been if this Charter had not been adopted." Rather, it would appear from the inclusion of the modifying clause, "pursuant to the optional form adopted," that the statute's reference to "the appropriate executive officer" means that executive officer or officers as defined and denominated in whichever subsection of s125.84, F.S., is applicable to any particular county chartered under Part IV of Ch. 125, F.S., i.e., the elected county executive (s 125.84[1], F.S.), the appointed county manager (s 125.84[2], F.S.), or the elected county chairman and appointed county administrator exercising jointly the responsibilities and powers enumerated in s 125.85 (s 125.84[3], F.S.). Thus, with respect to the Hillsborough County Charter adopting the county manager form of charter government pursuant to ss 125.83(1) and 125.84(2), the "appropriate executive officer" for purposes of the responsibilities and powers which "shall be assigned to, and vested in, the appropriate executive officer" is the county manager, or, as denominated by the Charter, the county administrator.
However, to the extent that s 5.01 of the Charter provides that the executive responsibilities and powers of local self-government "not inconsistent with this Charter" shall be assigned to and vested in the county administrator, it would appear to be "inconsistent with [the] Charter" for the county administrator to perform the constitutional duties of the elected tax collector and clerk of the circuit court pursuant to s 125.85(5), F.S., to the exclusion of the performance of those duties by such officers, where s 1.02 of the Charter expressly provides that the Charter does not affect such constitutional officers. Moreover, were the administrator to perform such duties to the exclusion of the elected constitutional officers, s 125.85(5) could be viewed as constitutionally suspect in a manner similar to s 125.86(3), F.S., in the absence of charter provision or special law approved by vote of the electors to the contrary pursuant to s 1(d), Art. VIII, State Const., or general or special law dividing the duties of the clerk pursuant to s 16, Art. V, State Const. However, I am of the view that the county administrator may perform the responsibilities enumerated in s 125.85(5) in a manner consistent with the Charter and the Constitution where the performance of such responsibilities merely supplements or perhaps duplicates the duties of the tax collector and the clerk of the circuit court but does not involve the administrator's direction of the elected officers in the performance of their constitutional duties. Alachua County v. Powers, supra; State ex rel. Landis v. Wheat, supra.
To the extent that the statutory term "supervise" as used in s125.85(5) may be viewed as ambiguous, see, Continental Casualty Co. v. Borthwick, 177 So.2d 687, 690 (1 D.C.A.Fla., 1965), it would appear that such term should be construed as consistent with the supplementation or duplication of duties of constitutional officers who retain their status under charter government pursuant to Part IV of Ch. 125, F.S., rather than requiring the appropriate executive officer of the charter government to perform such responsibilities to the exclusion of the elected constitutional officers, in order to preserve the constitutional validity of s125.85(5). See the discussion under Question One, supra. See also, State ex rel. Davis v. Rose, 122 So. 225 (Fla. 1929); Wright v. Board of Public Instruction of Sumter County, 48 So.2d 912
(Fla. 1950) (ambiguity in statute should be interpreted to avoid violation of constitutional limitations, if possible).
Therefore, unless and until legislatively or judicially determined otherwise, I am of the opinion that the executive powers and duties prescribed in s 125.85(5), F.S., may not be divided and separated from those assigned to and vested in the county administrator by the Charter adopted by Hillsborough County pursuant to ss 125.83(1) and 125.84(2), F.S., where the county constitutional officers retain their duties as if the charter had not been adopted, but that the performance by the county administrator of the responsibilities enumerated in s 125.85(5) may supplement and perhaps duplicate the duties of the constitutional officers without inconsistency with the Charter or conflict with the Florida Constitution when statutory regulation of duties is authorized by the Constitution.
QUESTIONS THREE AND FOUR
Questions Three and Four involve the validity and effectiveness of a particular special act of the Legislature and the validity and effect of provisions of the Charter purporting to limit the effect of certain laws in general, respectively. Accordingly, these related questions will be answered together.
Section 9.01 of the Charter provides as follows:
 No law passed by the state legislature shall be effective as to the county government:
(a) Unless it is approved at referendum, or
(b) Except to the extent:
 (1) The Florida Constitution or this Charter requires that it be effective, or
 (2) It permits this county government to grant powers to, receive powers from, or combine powers with other governmental entities, or
(3) It solely affects:
(i) Tax authorization not inconsistent with this Charter or
 (ii) The relations of this county government to any governmental body which has jurisdiction extending beyond the boundary of Hillsborough County, or
(4) It is authorized under section 2.01. (e.s.)
Section 10.05 of the Charter provides as follows:
 All provisions of the laws or parts thereof rendered ineffective as to the county government by section 9.01, which are not inconsistent with this Charter shall become ordinances of this government subject to modification or repeal as are other ordinances; however, they shall stand repealed as of November 15, 1985. (e.s.)
And see, s 2.01 of the Charter, providing as follows:
 The county government shall have all powers of local self-government not inconsistent with general law; special law approved by the vote of the electors of Hillsborough County; special law relating to civil service, aviation, the port, sports, transportation, hospitals, planning, environment, solid waste management, consumer affairs, resource recovery, criminal justice, historic preservation, and the arts, which laws may be effective as to Hillsborough County without approval by vote of the electors; or this Charter.
These sections of the Charter are presumptively valid until and unless judicially determined otherwise, and this office has no authority to declare such provisions invalid or ineffectual. See, e.g., White v. Crandon, 156 So. 303 (Fla. 1934); AGO 84-36. However, to the extent that s 9.01 specifically excepts from its operation those laws passed by the Legislature which "[t]he Florida Constitution or this Charter requires [to] be effective," it would appear that the following observations are warranted.
In AGO 81-7 this office addressed the authority of a charter county to supersede or alter existing special acts relating to the county which had not been approved by referendum. This office concluded that neither s 1(c), Art. VIII, State Const., authorizing county government to be established by charter pursuant to general law nor the implemental legislation, Parts II and IV of Ch. 125, F.S., empowered a charter form of county government to amend or repeal any statute theretofore enacted by the state Legislature. In addition, this office was of the opinion that the reference in s 1(g), Art. VIII, to a "special law approved by vote of the electors" concerned those special laws adopting or amending or adding powers or limitations to county charters which organic documents contain and prescribe the powers, or limitation on powers, of charter counties. It would therefore appear that the language of s 1(g), Art. VIII, which provides that charter counties possess "all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors" is a limitation on the power of the Legislature to enact special laws (subsequent to the adoption of the charter) regulating the county and does not constitute a grant of power to the county to provide by charter for nullification or supersedure of the existing laws of the state. The power to amend or repeal the statutory law is a legislative power belonging to the state which, by the terms of s 1, Art. III, State Const., is vested in the state Legislature. Therefore, "[i]n the absence of some express constitutional authority therefore, it would seem axiomatic that existing statutes may be amended or repealed or repealed only by another statute enacted by the State Legislature." Attorney General Opinion 81-7. See, s 6(d), Art. VIII, State Const., providing limited authority for a county, charter or noncharter, to amend or repeal a law enacted by the Legislature: "Local laws relating only to unincorporated areas of a county on the effective date of this article may be amended or repealed by county ordinance." And see, AGO 81-55 concluding that a charter form of government established pursuant to s 1(c), Art. VIII, State Const., and implemental general law is not constitutionally or statutorily empowered to enact a county ordinance which amends or repeals any special act creating and establishing an independent special district that is separate from such charter form of county government with county wide jurisdiction and whose enabling legislation is of countwide force and effect. See also, AGO's 71-154, 71-109 and 71-102 (charter county without authority to alter statutory law of state except to extent permitted by the Constitution).
The Constitution, however, recognizes the authority of a county to provide by charter for a form of government different from that specified therein. Section 1(e), Art. VIII, State Const., provides for the composition, reapportionment and election of the board of county commissioners "except when otherwise provided by county charter." See, Socash v. Volusia County, Case No. 51,920 (7th Cir. Fla., July 24, 1972), aff'd mem., 267 So.2d 77 (Fla. 1972), concluding that the county charter exception to s 1(e), Art. VIII, applies to the entire subsection and therefore the Volusia County charter could provide for the election of members of that county's governing body from single-member districts. This office in AGO 77-119 concluded that given this specific constitutional authorization, a charter county may provide for a form of county government different from that provided by general law as the exception for county charters in s 1(e), Art. VIII, necessarily constitutes an exception to the provisions of general (or special) law as well. And see, s 1(d), Art. VIII, State Const., setting forth the constitutional county officers "except, when provided by county charter or special law approved by vote of the electors of the county, any county officer may be chosen in another manner therein specified, or any county office may be abolished when all the duties of the office prescribed by general law are transferred to another office. . . ." See also, AGO 71-294, citing to s 1(d) and (e), Art. VIII and stating that it would seem that a charter county differs from noncharter counties chiefly in the form of government that it may adopt.
You specifically inquire as to the effect of Ch. 78-528, Laws of Florida, as amended by Ch. 79-475, Laws of Florida, relating to the qualifications, powers, duties and manner of appointment and removal of the county administrator, to the extent that such act may be inconsistent with the terms of the county charter. As previously noted, the Constitution authorizes the establishment of a charter form of county government as provided by general or special law, s 1(c), Art. VIII, State Const., and Hillsborough County, pursuant to this constitutional authorization and the implemental provisions of general law, has adopted a county manager form of government. See, s 125.84, F.S., setting forth the optional forms of county charter government, specifically subsection (2) which provides that the county manager (referred to as the county administrator in the Hillsborough County Charter) "shall be appointed by, and serve at the pleasure of, the board [of county commissioners] and shall exercise the executive responsibilities assigned by the charter;" and s 125.85, F.S., requiring that certain responsibilities, duties and powers be assigned to and vested in the appropriate executive officer, i.e., the county administrator. Thus the responsibilities and duties of the county administrator appear to be an integral part of the form of county government and of the county charter. Compare, AGO 71-102 which considered the authority of a charter county to alter the terms of a special act creating a public corporation or special district, separate and distinct from the county and countygovernment, and concluded that a county home rule charter could not encroach on the powers delegated to such corporation or special district by the Legislature since the Legislature had in effect reserved to the state the power to control the particular function or service until the Legislature itself decided to relinquish to the county the right to do so. And see, AGO 81-55 (charter county not authorized to amend or repeal any existing special law creating and establishing an independent special district that is separate from such charter form of county government); AGO's 84-64 and 71-154.
In light of the exercise by Hillsborough County of the authority granted by the Constitution and the implemental provisions of general law to adopt a county charter, specifically a county manager (county administrator) form of charter government, and based upon the foregoing, I am of the view that the provisions of the county charter relating to the county administrator would prevail over any inconsistent provisions of Ch. 78-528, Laws of Florida, as amended. However, in the absence of any judicial determination and in light of the potential impact on the operation of government by charter counties, you may wish to submit this matter to the courts for resolution by declaratory judgment. Moreover, to the extent that ss 9.01 and 10.05 of the Charter expressly limit their effect to that extent constitutionally permitted, I am further of the view that the Hillsborough County Board of County Commissioners derives no authority from these provisions of the Charter to amend or repeal by ordinance any special laws which do not relate only to unincorporated areas of the county and which were not in effect on the effective date of Art. VIII, State Const. See, AGO 81-7 and cases and authorities cited therein.
In summary, then, and until and unless judicially determined otherwise, I am of the opinion that:
 1. Unless legislatively determined otherwise, the board of county commissioners of a county chartered pursuant to the Optional County Charter Law, Part IV, Ch. 125, F.S., may appoint as clerk to the board someone other than the clerk of the circuit court, but that such appointment does not affect the constitutional duties of the clerk of the circuit court in the absence of a charter provision or special law approved by vote of the electors to the contrary, or special or general law dividing the duties of the clerk of the circuit court between two officers.
 2. Unless legislatively determined otherwise, the executive powers and duties described in s 125.85(5), F.S., may not be divided and separated from those assigned to and vested in the county administrator by the Charter adopted by Hillsborough County pursuant to ss 125.83(1) and 125.84(2), F.S.; however, where the county constitutional officers retain their duties as if the Charter had not been adopted, the performance by the county administrator of the responsibilities enumerated in s 125.85(5) may supplement and perhaps duplicate the duties of the constitutional officers without inconsistency with the Charter or conflict with the Florida Constitution.
 3. The provisions of the Hillsborough County Charter relating to the county administrator would prevail over any inconsistent provisions of Ch. 78-528, Laws of Florida, as amended; however, in the absence of judicial determination and in light of the potential impact on charter county government, you may wish to submit the matter to the courts for resolution by declaratory judgment.
 4. Sections 9.01 and 10.05 of the Charter are presumptively valid and, pursuant to the express limitations therein, the Hillsborough County Board of County Commissioners has no authority under the Charter to amend or repeal by ordinance any special laws which do not relate only to unincorporated areas of the county and which were not in effect on the effective date of Art. VIII, State Const.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General