(795 P.2d 411)

No. 64,309

STATE OF KANSAS, *ex rel.* ROBERT T. STEPHAN, ATTORNEY
GENERAL, *Appellee,* v. EVERETT L. JOHNSON, *Appellant.*

Opinion filed July 6, 1990.

*Clark V. Owens II,* of Wichita, for the appellant.

*John W. Campbell,* deputy attorney general, and *Robert T. Stephan,*
attorney general, for the appellee.

Before ABBOTT, C.J., GERNON, J., and CARL B. ANDERSON, JR.,
District Judge, assigned.

ANDERSON, D.J.: This is an appeal by Everett L. Johnson, respondent-appellant, from the district court's order that, because he is a tenured teacher at Wichita State University, he is not eligible to be a member of the State Board of Education.

On April 8, 1989, Richard Peckham, the popularly elected board member for District No. 10 of the Kansas State Board of Education (Board), resigned. Everett L. Johnson was appointed to the vacancy created by Peckham's resignation. Johnson is a tenured faculty member of Wichita State University and, as such, is an employee of the State of Kansas. He filed an oath of office on June 6, 1989, with the Kansas Secretary of State. He has, since that time, been acting as the Board member for the 10th District.

On May 26, 1989, the attorney general issued his opinion that K.S.A. 25-1904 precludes Johnson from serving on the Board because he is a state employee. The State of Kansas, through the attorney general, filed a petition in quo warranto in Shawnee County District Court, requesting that the court enter an order "ousting and removing" Johnson from his position on the Board. District No. 10 then held another convention and elected Gwendel A. Nelson as a Board member. The State amended its petition

in quo warranto, adding Nelson as a party, alleging his election was null and void, and requesting the court to find that a vacancy existed in the Board position in District No. 10. Johnson filed an answer challenging the constitutionality of K.S.A. 25-1904. Nelson has voluntarily resigned from the office and is not a party to this appeal.

Both Johnson and the State moved for summary judgment on the State's petition in quo warranto. The trial court granted the State's motion for summary judgment, finding K.S.A. 25-1904 constitutional. We agree.

K.S.A. 1989 Supp. 60-256(c) allows summary judgment when there is no genuine issue of fact and one party is entitled to judgment as a matter of law. In this case there is no dispute regarding the relevant facts. The parties are in agreement that this is a proper case for summary judgment.

Article 6, § 2(a) of the Constitution of the State of Kansas provides:

"The legislature shall provide for a state board of education which shall have general supervision of public schools, educational institutions and all the educational interests of the state, except educational functions delegated by law to the state board of regents. The state board of education shall perform such other duties as may be provided by law."

Article 6, § 3(a) provides:

"There shall be ten members of the state board of education with overlapping terms as the legislature may prescribe. The legislature shall make provision for ten member districts, each comprised of four contiguous senatorial districts. The electors of each member district shall elect one person residing in the district as a member of the board. The legislature shall prescribe the manner in which vacancies occurring on the board shall be filled."

K.S.A. 25-1904 provides: "No state, school district or community junior college officer or employee shall be a member of the state board of education."

The State contends that K.S.A. 25-1904 prohibits Johnson, a state employee, from holding a position on the Board. Johnson argues that K.S.A. 25-1904 is unconstitutional because it creates additional requirements for membership on the Board. He argues that, since the Board is created by the Kansas Constitution, the

legislature cannot enact statutes creating additional requirements for its members.

In determining the constitutionality of a statute, our Supreme Court has stated the following rules:

" ' "This court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done." ' (Quoting *State v. Huffman*, 228 Kan. 186, Syl. ¶ 1, 612 P.2d 630 [1980])." *Federal Land Bank of Wichita v. Bott*, 240 Kan. 624, 628-29, 732 P.2d 710 (1987).

Johnson relies on a 1926 case, *Jansky v. Baldwin*, 120 Kan. 332, 243 Pac. 302 (1926). In *Jansky*, the plaintiff was elected as county superintendent of public instruction in Republic County. The defendant, Baldwin, had run against Jansky in her bid for re-election and won. Jansky filed a petition in quo warranto, alleging Baldwin was not qualified because he had not taught for 18 months, which was a statutory requirement for the office. Baldwin responded that the statute was unconstitutional because the office was created by the Kansas Constitution and the statute increased the qualifications beyond those in the constitution. At that time, Article 6, § 1 of the constitution provided: "A super-intendent of public instruction shall be elected in each county, whose term of office shall be two years and whose duties and compensation shall be prescribed by law." Kan. Const. art. 6, § 1 (R.S. 1923). The Kansas Supreme Court found that the con-stitution was silent on the qualifications for the position and, thus, the legislature was free to set eligibility requirements. 120 Kan. at 334. It stated the following general rule in reaching its decision:

"This section of the constitution is silent as to requirements of eligibility. It is the rule that when the constitution of a state creates an office, and names the requirements of eligibility therefor, the legislature has no au-thority to make additional requirements, nor to provide that one may hold the office who does not have the constitutional requirements. When an office is created by an act of the legislature, that body has authority to name the terms of eligibility, and modify them at will. [Citations omitted.]" 120 Kan. at 333.

Baldwin also argued that the constitution provided general disqualifications for all officeholders and that they were the only disqualifications for any office unless the constitution was amended. 120 Kan. at 333. The court rejected this argument with the following analysis:

"Under our form of government all governmental power is inherent in the people. Some governmental powers are delegated to congress, or to the federal government, by our federal constitution; those not so delegated are retained by the people. Hence, congress has no legislative power not granted to it by the federal constitution. This is not true of a state constitution. Since the people have all governmental power, and exercise it through the legislative branch of the government, the legislature is free to act except as it is restricted by the state constitution, and except, of course, the grant of authority to the federal government by the federal constitution. Our constitution (art. 5, §§ 2, 5 and 6) has placed certain restrictions upon the right of suffrage and the right to hold office. So long as a legislative act does not infringe upon those restrictions, it cannot be said to be unconstitutional. [Citations omitted.] Suitable educational qualifications and previous experience of such officers as county superintendent of public instruction change with changed conditions of the people. The constitution, although it provided such office, did not deal with the subject of the specific fitness of the person who should be elected to such office, leaving that to the legislature to be fixed and modified as educational needs might require." 120 Kan. at 334.

In *Jansky*, the constitutional provision at issue listed no qualifications for the office of county superintendent of public instruction. This was the basis for the Supreme Court's decision that the legislature was free to create qualifications for the position.

We agree with appellant that the provision at issue here, Article 6, § 3, is not completely silent on requirements for membership on the Board. It provides that the electors shall elect one person "residing in the district." However, we also note that it is not as specific as other sections setting constitutional qualifications for other offices. Article 2, § 4 provides that a member of the house or senate must be a qualified elector residing in his or her district. Article 2, § 5 provides that the member cannot be a federal employee. Still, other provisions in the Kansas Constitution specifically give the legislature power to enact qualifications. Article 1, § 1 states that other qualifications for governor, lieutenant governor, secretary of state, and attorney general shall be provided by law. Article 3, § 7 provides that Supreme Court

justices and judges shall be 30 years old, licensed to practice law, and fulfill other qualifications as provided by law. However, the absence of a specific grant of power to the legislature in Article 6, § 3 does not preclude the legislature from enacting further legislation since it does not rely on the state constitution for power. See *Jansky*, 120 Kan. at 334.

The annotation at 34 A.L.R.2d 155 discusses the legislature's power to specify qualifications for offices created by state constitutions. It states the general rule as follows:

"It is quite generally considered that where the constitution lays down specific eligibility requirements for a particular constitutional office, the constitutional specification in that regard is exclusive and the legislature (except where expressly authorized to do so) has no power to require additional or different qualifications for such constitutional office." 34 A.L.R.2d at 171.

However, it also notes that the specific nature of the constitutional language should be considered. Several jurisdictions distinguish "affirmative" qualifications from constitutional specifications of a "negative or minimum character." 34 A.L.R.2d at 173. Negative language, such as that no person under 35 shall be elected governor, is interpreted as not precluding the legislature from enacting further qualifications. This rationale is based on the theory that such language only sets forth minimum standards, while affirmative language, that all citizens over 35 shall be eligible for office, has been interpreted to prohibit the legislature from creating additional eligibility requirements. 34 A.L.R.2d at 166-67. Some jurisdictions, however, do not follow the "affirmative/negative" rationale. See *State ex rel. Powers v. Welch*, 198 Or. 670, 259 P.2d 112 (1953).

The language in Article 6, § 3, at issue here, is not that typically considered to be affirmative or negative. It merely provides that the district shall elect one person residing in that district. While no negative language is used, the requirement appears to be a minimum.

There are no cases on point in Kansas. However, our courts have continually stated the theory, relied on in *Jansky* and the annotation at 34 A.L.R.2d 155, that the legislature has the power to enact any law which is not precluded by the state or federal constitutions. See *Leek v. Theis*, 217 Kan. 784, 802, 539 P.2d

304 (1975); *NEA-Fort Scott v. U.S.D. No. 234*, 225 Kan. 607, 592 P.2d 463 (1979). Unlike the federal constitution, which grants power, the Kansas Constitution limits power. See *Leek v. Theis*, 217 Kan. at 800-02. Hence, "where the constitutionality of a state statute is involved, the question presented is not whether the act is expressly or impliedly authorized by the constitution, but whether it is expressly or impliedly prohibited by the constitution. [Citations omitted.]" 217 Kan. at 803.

Article 6, § 2(a) provides that the legislature shall provide for a State Board of Education. This provision would conflict with Article 6, § 3 if Johnson is correct in his contention that the residency requirement precludes the legislature from enacting further qualifications. However, we do not believe that Article 6, § 3 contains such an express prohibition. In *Jansky*, the court acknowledged that the conditions and qualifications of a certain office may change and the legislature should be able to enact statutes to meet those changing needs. 120 Kan. at 334. While Article 6, § 3 is not completely silent on qualifications for Board members, it appears to only set forth the minimum requirement that the candidate be a resident of the district. No other requirements are mentioned. This limited language, when read together with Article 6, § 2(a), is not explicit enough to preclude the legislature from enacting further qualifications.

Johnson raises two other theories supporting his allegation that K.S.A. 25-1904 violates the Kansas Constitution. First, he argues that, since Article 6, § 3 is self-executing as suggested in *State, ex rel., v. Board of Education*, 212 Kan. 482, 487, 511 P.2d 705 (1973), the board of education may carry out its constitutional power of supervision without ancillary legislation. However, in *State, ex rel. v. Board of Education*, the court found that Article 6, § 3 is self-executing only in part. Furthermore, the court stated that, even if a constitutional provision is self-executing, the legislature could enact legislation to assist in its operation as long as the legislation was in harmony with the constitutional provisions. 212 Kan. at 488.

Finally, Johnson argues that K.S.A. 25-1904 is in conflict with Article 2, § 18 and Article 15, § 1, which together provide that the legislature shall provide for election or appointment of all vacancies in office unless otherwise provided for in the consti-

tution. Since the constitution creates the State Board of Education, Johnson alleges the legislature cannot enact legislation to elect those members or fill vacancies. However, Article 6, § 3(a) specifically states that the legislature shall provide for the filling of vacancies on the Board. The constitution does not provide a method for electing the members. Since it is silent on this matter, the legislature is free to enact such procedures.

Johnson next argues that K.S.A. 25-1904 violates the First and Fourteenth Amendments of the United States Constitution. The First Amendment challenge is based on the argument that K.S.A. 25-1904 restricts one's right to freedom of political expression and to pursue public office by disallowing him to run for the State Board of Education. The State argues that Johnson cannot challenge this statute on behalf of any state employee who may be affected, but may only challenge it on behalf of himself. Thus, if the statute is constitutional as applied to him, then it must stand, regardless of whether it is unconstitutional as applied to others. Johnson contends that, since the First Amendment is at issue, he does not have to show the statute is unconstitutional as applied to him.

"The general rule governing the standing of a party to challenge the constitutionality of legislation is that a litigant to whom a statute may constitutionally be applied will not be heard to challenge the statute on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the court. *Broadrick v. Oklahoma*, 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973). In the area of the First Amendment, limited exceptions to this rule are recognized. Courts have permitted attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. *Freedman v. Maryland*, 380 U.S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965). A person is allowed to challenge a statute as overly broad based upon the assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *State v. Thompson*, 237 Kan. 562, 563, 701 P.2d 694 (1985).

However, particularly where conduct as opposed to speech is being infringed, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973). Overbreadth

scrutiny is less rigid when the challenged statute restricts conduct protected by the First Amendment, but does so in a "neutral, noncensorial manner." 413 U.S. at 614.

At issue in *Broadrick* was an Oklahoma statute which broadly restricted the political activities of the State's classified civil servants. 413 U.S. at 602-03. Since the Oklahoma statute was not directed at "particular groups or viewpoints," it was "subject to a less exacting overbreadth scrutiny." 413 U.S. at 616.

On the same day as its decision in *Broadrick*, the United States Supreme Court issued its opinion in *CSC v. Letter Carriers*, 413 U.S. 548, 37 L. Ed. 2d 796, 93 S. Ct. 2880 (1973). In that case, the court upheld the constitutionality of the Hatch Act, which prohibits federal classified employees from engaging in a wide variety of political activity, including running for office. The court, in making its decision, acknowledged the important interest the government had in limiting its employees' partisan political activities. 413 U.S. at 564. It also considered the fact that the legislation was not discriminatory, nor was it aimed at any particular group or viewpoint. 413 U.S. at 564.

Restrictions on the political activities of public employees by themselves do not violate the rights guaranteed by the First Amendment. *Broadrick v. Oklahoma*, 413 U.S. at 616-17. Like the Oklahoma statute at issue in *Broadrick*, K.S.A. 25-1904 is not a "censorial statute, directed at particular groups or viewpoints." Instead, it "seeks to regulate political activity in an evenhanded and neutral manner." 413 U.S. at 616. Thus, it does not violate the First Amendment.

Johnson also alleges K.S.A. 29-1504 violates the Equal Protection Clause. Johnson contends that the State must show a compelling interest for excluding one section of society from running for the State Board of Education. In support of this position, he cites several cases which we do not find applicable. *Kramer v. Union School District*, 395 U.S. 621, 23 L. Ed. 2d 583, 89 S. Ct. 1886 (1969), holds that the State must show a compelling interest before it can impose certain restrictions, other than age, residency, and citizenship, on a person's eligibility to vote. *Kramer* does not address the issue of restrictions on the right to run for political office. In *Stone v. City of Wichita Falls*, 477 F. Supp. 581, 584 (N.D. Tex. 1979), the United States District Court in

the Northern District of Texas stated that the right to run for office was an important, but not fundamental, right under the First Amendment. However, the court then stated that the State must prove statutory restrictions are "reasonably necessary to achieve one or more compelling public objectives." 477 F. Supp. at 584-85. Johnson also cites two Rhode Island cases, which held that, while the State has a compelling interest in regulating the political activities of its employees, the statutes at issue were too broad because they included partisan and nonpartisan offices. *Martin v. State Board of Elections*, 381 A.2d 235 (R.I. 1977); *Cummings v. Godin*, 377 A.2d 1071 (R.I. 1977).

More on point is *Clements v. Fashing*, 457 U.S. 957, 963, 73 L. Ed. 2d 508, 102 S. Ct. 2836 (1982), which provides that candidacy to run for office is not a "fundamental right." Thus, it " 'does not of itself compel close scrutiny.' " 457 U.S. at 963. If a fundamental right is not involved, it is not necessary to deviate from the traditional equal protection principles, which provide:

"[D]istinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." 457 U.S. at 963.

At issue in *Clements* were two provisions of the Texas Constitution. One, Article XVI, § 65, provided that certain public officials, not all, who declared their candidacy for another public office must resign. The other, Article III, § 19, provided that holders of certain offices were not eligible for the Texas Legislature until their present term of office expired. The court found that the waiting period created by § 19 was insignificant interference and "need only rest on a rational predicate in order to survive a challenge under the Equal Protection Clause." 457 U.S. at 968. That rational predicate existed because § 19 furthered the State's interest in upholding the integrity of the justices of the peace. Nor did § 19 violate the Equal Protection Clause because it restricted the justices only from running for the legislature, not any other offices. 457 U.S. at 971. The State could not be punished for limiting the positions on which it placed restrictions. 457 U.S. at 969. The Supreme Court found that § 65 was a less substantial interference than § 19. It was not invalid

simply because it did not require all officeholders to resign before running for another office. 457 U.S. at 970-71.

The rationale for the exclusion of State employees in the present case is based on the potential conflict of interest for a tenured professor serving on the State Board of Education. The Board and the Board of Regents, which oversees Wichita State University, Johnson's employer, do not share duties. The Board supervises public education through the high school and community college level. The Board of Regents supervises higher education. However, a conflict could arise when the two are vying for the same budget monies. While Johnson, as an employee, could want Wichita State University to receive greater funds, as a Board member he should be working for that association's funding. The same conflict could arise with other unclassified employees. Johnson's argument that K.S.A. 25-1904 violates the Equal Protection Clause because it prohibits membership of unclassified State employees on this Board, while no similar restriction is placed on other offices, is not persuasive. *Clements* clearly holds that the State does not have to place equal restrictions on all offices, even if the same rationale might apply.

The State does not have to show a compelling reason for the statute. It is adequate that the potential conflict of interest exists. K.S.A. 25-1904 does not violate the United States Constitution's guarantees of free speech and equal protection.

Affirmed.