The Honorable Marge Petty State Senator, 18th District State Capitol, Rm. 422-S Topeka, Kansas 66612
Dear Senator Petty:
You request our opinion regarding the constitutionality of 1999 Senate Bill No. 288 (S.B. 288). Specifically, you ask whether provisions of the bill violate the right of free speech or equal protection guaranteed under the United States and Kansas Constitutions.
The Legislature is in the process of working S.B. 288. Through this process, the bill may be amended and the meaning of its provisions may become clearer. My review is limited to the form of the bill as introduced and your explanation of its terms.
Under S.B. 288, no officer or employee of the State of Kansas, or of the municipalities listed in the bill, who is responsible for the disbursement of funds in payment of wages or salaries may withhold or divert a portion of such wages or salaries for contributions to political committees for use as political contributions except upon the annual written request of the employee. The written request of the employee is to be in the form prescribed by the Governmental Ethics Commission. [The bill actually refers to the Commission on Governmental Standards and Conduct. The name of the Commission was changed to the Governmental Ethics Commission during the 1998 legislative session.] The bill may have a major impact on the political contributions received by Kansas-National Education Association.[1] However, its provisions appear to apply in all instances where a public employee attempts to have a portion of his or her wages or salaries diverted to a political committee for use as political contributions, regardless of the type, structure, viewpoint, or goal of the political committee. The bill does not require a private employer to obtain similar written statements from its employees before withholding or diverting wages or salaries to political committees. It appears that it is the difference in the treatment of public employers and private employers that has led to your concern regarding the constitutionality of the bill.
The same analysis is applicable in determining whether a legislative act violates the Free Speech Clauses of the United States and Kansas Constitutions. Similarly, the same analysis determines whether a legislative act violates the Equal Protection Clauses of the United States and Kansas Constitutions. A statute which is found not to violate the Free Speech and Equal Protection Clauses of the United States Constitution likewise survives scrutiny under Sections 1, 2, and 11 of the Bill of Rights of the Kansas Constitution.[2]
"The First Amendment [to the United States Constitution] affords the broadest protection to [the discussion of public issues and debate on the qualifications of candidates] in order `to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'"[3] The United States Supreme Court has recognized that political contributions "serve as a general expression of support for the candidate and his views. . . ."[4] "While contributions may result in political expression if spent by a candidate or an association to present views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor."[5] Expenditures made independently by a candidate, individual, or group in order to engage directly in political speech are constitutionally protected.[6] However, the "speech by proxy" that an individual or group may achieve through contributions to a political committee "is not the sort of political advocacy that [the Supreme] Court in Buckley found entitled to fullFirst Amendment protection."[7]
 "If the First Amendment rights of a contributor are not infringed by limitations on the amount he may contribute to a campaign organization which advocates the views and candidacy of a particular candidate, the rights of a contributor are similarly not impaired by limits on the amount he may give to a multicandidate political committee . . . which advocates the views and candidacies of a number of candidates."[8]
Senate Bill No. 288 regards the manner in which an employee of a public entity may make a contribution to a political committee. The bill does not regulate the amount that may be contributed by the employee, but rather establishes a condition that must be met before a governmental entity may assist in delivering the contribution to a political committee. The employee retains the ability to make contributions to political committees to the maximum amount permitted by law. The provisions of the bill, if adopted by the Legislature, would not result in the enactment of a "censorial statute, directed at particular groups or viewpoints," but instead would be a "regulat[ion of] political activity in an even-handed and neutral manner."[9] As far as we have been able to determine, there is no obligation on the State to provide a mechanism through which an employee may have contributions deducted from his or her salary and forwarded to political committees designated by the employee. Absent such an obligation, the bill addresses "speech by proxy" which is not entitled to the full protection of the First Amendment. It is our understanding that the purposes served by the bill are to ensure that an employee understands the contributions are voluntary and to provide a means whereby the governmental entity is assured on an annual basis that an employee continues to wish to have the contributions deducted from his or her compensation. S.B. 288 does not violate the First Amendment to the United States Constitution or Section 11 of the Bill of Rights of the Kansas Constitution.
Equal protection arguments under the United States Constitution and the Kansas Constitution are generally based upon allegations that a particular statutory classification denies to the person or parties falling within the classification some right which is not denied to others alleged to be similarly situated.[10] Equal protection analysis must begin with a determination of the applicable level of judicial scrutiny to be applied in analyzing the statute in question.[11] Strict scrutiny review — the most exacting standard of review under the Equal Protection Clause — is reserved for statutes or state constitutional amendments that discriminate against members of traditionally suspect classes,[12] or infringe on any fundamental constitutional right.[13] Laws that are subject to strict scrutiny review will be sustained only if they are supported by a compelling state interest and are narrowly drawn to achieve that interest in the least restrictive manner possible.[14]
Intermediate review, which requires a showing that the law in question is substantially related to a sufficiently important governmental interest,[15] has been applied in the context of laws which draw distinctions based on gender,[16] and illegitimacy,[17] but not to those laws which create differential treatment based on age.[18]
In those instances in which no suspect classification or quasi-suspect classification has been set forth and no fundamental rights are at issue, the least strict level of scrutiny is appropriate.[19] Traditionally, the yardstick for measuring equal protection arguments has been the reasonable basis test.[20] The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. The classifications created through the laws of a State do not violate the Equal Protection Clause merely because the classifications are imperfect.[21]
State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.[22] "In cases where a classification burdens neither a suspect group nor a fundamental interest, `courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws.'"[23]
Because S.B. 288 does not result in a suspect classification or quasi-suspect classification and does not affect fundamental rights, the least strict level of scrutiny is appropriate. We have not been provided with information regarding the reason the bill is not applicable to private employers. The distinction may be derived from the belief that the deduction from the public employee's salary in some manner shows support for the political committee by the public entity. The perceived appearance of support of a political committee by a private employer does not achieve the same concern. The annual written request of the public employee also provides a mechanism by which the public entity is reassured of the wishes of its employee, thereby alleviating any misunderstanding or disaffection that could occur if unwelcome deductions from an employee's salary were made. The public entity would not incur similar difficulties if unwanted deductions from the salary of a private employee were made by a private employer. Because the distinctions drawn through S.B. 288 may be justified by legitimate concerns of the State, the provisions of S.B. 288 do not violate the Equal Protection Clauses of the United States and Kansas Constitutions.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] David Miles, "Committee wants public employees to be aware of PAC salary contributions," Topeka Capital-Journal (February 24, 1999).
[2] See State ex rel. Tomasic v. City of Kansas City,237 Kan. 572, 583 (1985); U.S.D. No. 503 v. McKinney, 236 Kan. 224,234-36 (1984); Leiker v. Employment Security Board of Review,8 Kan. App. 2d 379, 387 (1983).
[3] Buckley v. Valeo, 424 U.S. 1, 14, 46 L.Ed.2d 659,96 S.Ct. 612 (1976), quoting Roth v. United States, 354 U.S. 476,484, 1 L.Ed.2d 1498, 77 S.Ct. 1304 (1957).
[4] Buckley, 424 U.S. at 21.
[5] Id.
[6] Id., 424 U.S. at 44-48.
[7] California Medical Ass'n v. Federal Election Commission,453 U.S. 182, 196, 69 L.Ed.2d 567, 101 S.Ct. 2712 (1981).
[8] Id., 453 U.S. at 197.
[9] State ex rel Stephan v. Johnson, 14 Kan. App. 2d 542, 549
(1990), quoting Broadrick v. Oklahoma, 413 U.S. 601, 616,37 L.Ed.2d 830, 93 S.Ct. 2908 (1973), appeal dism'd as moot, State exrel Stephan v. Johnson, 248 Kan. 286 (1991).
[10] Bair v. Peck, 248 Kan. 824, 830 (1991).
[11] Bair, 248 Kan. at 830; Guardian Title Co. v. Bell,248 Kan. 146, 155 (1991).
[12] See, e.g., Graham v. Richardson, 403 U.S. 365, 372,29 L.Ed.2d 534, 91 S.Ct. 1848 (1971) (alienage); Loving v. Virginia,388 U.S. 1, 11, 18 L.Ed.2d 1010, 87 S.Ct. 1817 (1967) (race);Korematsu v. United States, 323 U.S. 214, 216, 89 L.Ed. 194,65 S.Ct. 193 (1944) (national ancestry and ethnic origin).
[13] City of Cleburne v. Cleburne Living Center, Inc.,473 U.S. 432, 440, 87 L.Ed.2d 313, 105 S.Ct. 3249 (1985).
[14] Plyler v. Doe, 457 U.S. 202, 217, 72 L.Ed.2d 786,102 S.Ct. 2382 (1982).
[15] Mississippi University for Women v. Hogan, 458 U.S. 718,724, 73 L.Ed.2d 1090, 102 S.Ct. 3331 (1982).
[16] Id., 458 U.S. at 723-24.
[17] Lalli v. Lalli, 439 U.S. 259, 265, 58 L.Ed.2d 503,99 S.Ct. 518 (1978).
[18] Gregory v. Ashcroft, 501 U.S. 452, 470, 115 L.Ed.2d 410,111 S.Ct. 2395 (1991); Massachusetts Board of Retirement v.Murgia, 427 U.S. 307, 313, 49 L.Ed.2d 520, 96 S.Ct. 2562 (1976).
[19] Guardian Title Co., 248 Kan. at 155.
[20] Bair, 248 Kan. at 831.
[21] Gregory, 501 U.S. at 473.
[22] McGowan v. Maryland, 366 U.S. 420, 425-26,6 L.Ed.2d 393, 81 S.Ct. 1101 (1961); Guardian Title Co., 248 Kan. at 155.
[23] Gregory, 501 U.S. at 470-71, quoting Massachusetts Bd.of Retirement v. Murgia, 427 U.S. 307, 314, 49 L.Ed.2d 520,96 S.Ct. 2562 (1976).